[No. S067030. May 10, 1999.]

CALIFORNIA TEACHERS ASSOCIATION et al., Plaintiffs and
Respondents, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren and Bill Lockyer, Attorneys General, Floyd D. Shimomura, Assistant Attorney General, Linda A. Cabatic, Michelle Gluck, Eileen Gray and Karen Leaf, Deputy Attorneys General, for Defendants and Appellants.

Susan E. Diedrich and John L. Bukey for the Education Legal Alliance as Amicus Curiae on behalf of Defendants and Appellants.

Tuttle & McCloskey, Ernest H. Tuttle III, Kay M. Tuttle and Daniel T. McCloskey for Plaintiffs and Respondents.

Catherine I. Hanson and Astrid G. Meghrigian for California Medical Association as Amicus Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**GEORGE, C. J.**—Education Code section 44944, subdivision (e), provides that whenever a teacher exercises his or her constitutional right to request a hearing regarding a threatened suspension or dismissal, but ultimately does not prevail at the hearing, the teacher is required to pay to the state one-half the cost of the administrative law judge. This cost is imposed in every case in which the teacher ultimately is suspended or dismissed, even if the teacher reasonably and in good faith has challenged the district's disciplinary action, and even if the teacher has prevailed on some of the district's charges. A teacher also is liable for this cost where the hearing results in a decision that the teacher should *not* be suspended or dismissed but where the favorable decision at the administrative hearing ultimately is reversed on judicial review.

We agree with the trial court and Court of Appeal that this cost provision is unconstitutional. The imposition upon such a teacher of the open-ended cost of the adjudicator conflicts with the centuries-old common law tradition that the salaries of judges are to be borne by the state, and not by the litigants. By its terms, the cost provision at issue in the present case—which is not limited to frivolous hearing requests but applies whenever the teacher ultimately is suspended or dismissed, without regard to the reasonableness of the teacher's position—advances no legitimate governmental interest. Furthermore, the state interest that is claimed to be advanced by this cost provision does not justify the risk of error posed by the provision, because substitute procedures limiting the imposition of costs to teachers engaging in frivolous tactics would conserve public resources while safeguarding the substantial liberty and property interests at stake in these proceedings.

I

Plaintiff Gary Daloyan is a permanent teacher employed by a public school district in San Joaquin County. The district notified plaintiff of its intent to dismiss him for evident unfitness for service and immoral conduct. (Ed. Code, § 44932 [specifying causes for dismissal of permanent teachers].)[1] The charge of immoral conduct, based upon allegations that plaintiff engaged in inappropriate verbal exchanges with students, permitted the district to suspend plaintiff immediately without pay. (§ 44939.) Plaintiff timely demanded a hearing, thus requiring the district either to rescind its action or to schedule a hearing. (§ 44943.)

Hearings to determine whether permanent public school teachers should be dismissed or suspended are held before the Commission on Professional

---

[1] Subsequent undesignated statutory references are to the Education Code.

Competence (Commission)—a three-member administrative tribunal consisting of one credentialed teacher chosen by the school board, a second credentialed teacher chosen by the teacher facing dismissal or suspension, and "an administrative law judge of the Office of Administrative Hearings who shall be chairperson and a voting member of the commission and shall be responsible for assuring that the legal rights of the parties are protected at the hearing." (§ 44944, subd. (b).) The Commission's decision is deemed to be the final decision of the district's governing board. (§ 44944, subd. (c).)

Following a 13-day hearing, the Commission unanimously determined that the district had failed to prove its charge that plaintiff engaged in immoral conduct, but also concluded that the district had proved plaintiff evidently was unfit for service. Based on the latter charge, the Commission determined that plaintiff should be dismissed. Neither plaintiff nor the district sought judicial review of the Commission's decision. (§ 44945.)

After his dismissal, the Department of General Services billed plaintiff for $7,747.97, representing half the cost of the administrative hearing, including the cost of the administrative law judge, as specified in section 44944, subdivision (e) (hereafter section 44944(e)).[2] Plaintiff did not pay this bill, and subsequently he was notified that his state income tax refunds would be offset against the debt. Plaintiff and the California Teachers Association petitioned the superior court for a writ of mandate to compel the state Controller not to offset the refund against the debt. The complaint alleges that the offset is for a debt imposed under a facially invalid statute that places an undue burden upon plaintiff's due process right to a hearing intended to determine whether he should lose his property interest in continued employment. The superior court determined that the cost provision in section 44944(e) is unconstitutional on its face and issued the writ.

In a divided decision, the Court of Appeal affirmed. The majority opinion reasoned that the district affirmatively was attempting to strip plaintiff of his property interest, and that the hearing before the Commission was the only effective means of resolving the dispute. Unlike litigants who seek state-paid

---

[2]Section 44944(e) states in part:

"If the Commission on Professional Competence determines that the employee should be dismissed or suspended, the governing board and the employee shall share equally the expenses of the hearing, including the cost of the administrative law judge. . . . The employee and the governing board shall pay their own attorney fees.

"If the Commission on Professional Competence determines that the employee should not be dismissed or suspended, the governing board shall pay the expenses of the hearing, including the cost of the administrative law judge, . . . and reasonable attorney fees incurred by the employee."

assistance in presenting a claim (such as that provided by appointed counsel or investigative funds), the teacher in this case was subject to a substantial monetary obligation simply for obtaining the due process hearing itself, for which there was no alternative. The obligation is open-ended, because the teacher has little or no control over the length or complexity of the hearing. The law has no provision for abatement of all or part of the costs based upon financial considerations, and no provision for apportionment or abatement if the teacher prevails in part. Finally, the imposition upon the teacher of costs, including the cost of the adjudicator, does not require any conduct on the part of the teacher that might be considered sanctionable, such as frivolous or bad faith conduct.

Accordingly, the Court of Appeal held that the cost provision placed too great a burden upon the exercise of the right to due process. The court also concluded that the state has no legitimate interest in denying a teacher a meaningful opportunity to be heard before termination—no matter how meritless the teacher's defense may prove to be. The dissenting opinion emphasized that plaintiff did receive a hearing and that the record reveals nothing regarding his financial condition, and concluded that the hearing costs are neither arbitrary nor unlimited because they are directly related to the cost of the proceeding.

We granted the Controller's petition for review.

## II

"As [the United States Supreme] Court has stated from its first due process cases, traditional practice provides a touchstone for constitutional analysis. [Citations.]" (*Honda Motor Co.* v. *Oberg* (1994) 512 U.S. 415, 430 [114 S.Ct. 2331, 2339, 129 L.Ed.2d 336].) Thus, in considering whether section 44944(e) satisfies constitutional requirements, it is important to recognize that its provision requiring any dismissed or suspended teacher who requests a hearing to pay half the cost of the hearing officer or adjudicator provided by the state is unique and virtually unprecedented.

The first state constitutions following the American Revolution abolished the fee system of the colonial courts and provided that judges instead should receive fixed salaries. (Pound, Organization of Courts (1940) pp. 156, 193.) As one federal appellate court recently stated with regard to the vindication of statutory rights: "[W]e are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case." (*Cole* v. *Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465, 1484 [323

App.D.C. 133] (*Cole*).) Even in England, where the government's cost of providing civil courts is funded primarily by *litigant* fees, and the losing party automatically must pay the prevailing party's costs and attorney fees, judges' salaries are paid from *public* funds. (Jackson, The Machinery of Justice in England (6th ed. 1972) pp. 413-420.)

Litigants may be required to pay fixed, incidental court fees that indirectly subsidize the cost of judges, such as filing fees. (E.g., Gov. Code, §§ 26820-26863.) Fees or penalties that are contingent upon the outcome of the case, however, are examined closely to ensure that the parties are not deprived of a disinterested and impartial adjudicator. (*Tumey* v. *Ohio* (1927) 273 U.S. 510, 531-532 [47 S.Ct. 437, 444, 71 L.Ed. 749, 50 A.L.R. 1243].) Prevailing parties in civil litigation also may recover from their adversaries various costs of litigation, but these costs never have included the cost of judges. (See Code Civ. Proc., §§ 1032, 1033.5.)

The established tradition of the public funding of judicial compensation undoubtedly arises from the central role of our judicial system in society. "Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitively settle their differences in an orderly, predictable manner. Without such a 'legal system,' social organization and cohesion are virtually impossible; with the ability to seek regularized resolution of conflicts individuals are capable of interdependent action that enables them to strive for achievements without the anxieties that would beset them in a disorganized society. . . . [¶] American society, of course, bottoms its systematic definition of individual rights and duties, as well as its machinery for dispute settlement, not on custom or the will of strategically placed individuals, but on the common-law model. *It is to the courts, or other quasi-judicial official bodies, that we ultimately look for the implementation of a regularized, orderly process of dispute settlement.* Within this framework, those who wrote our original Constitution, in the Fifth Amendment, and later those who drafted the Fourteenth Amendment, recognized the centrality of the concept of due process in the operation of this system. Without this guarantee that one may not be deprived of his rights, neither liberty nor property, without due process of law, the State's monopoly over techniques for binding conflict resolution could hardly be said to be acceptable under our scheme of things. Only by providing that the social enforcement mechanism must function strictly within these bounds can we hope to maintain an ordered society that is also just." (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 374-375 [91 S.Ct. 780, 784, 28 L.Ed.2d 113], italics added.)

We have expressed similar views regarding the importance of the courts. "Few liberties in America have been more zealously guarded than the right to protect one's property in a court of law. This nation has long realized that none of our freedoms would be secure if any person could be deprived of his possessions without an opportunity to defend them ' "at a meaningful time and in a meaningful manner." ' [Citation.] In a variety of contexts, the right of access to the courts has been reaffirmed and strengthened throughout our 200-year history." (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 911 [132 Cal.Rptr. 405, 553 P.2d 565].) Our concern with protecting free access to the courts has led us to limit various torts, such as malicious prosecution, that are based upon conduct related to litigation. (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1130-1137 [270 Cal.Rptr. 1, 791 P.2d 587].) "Obviously if the bringing of a colorable claim were actionable, tort law would inhibit free access to the courts and impair our society's commitment to the peaceful, judicial resolution of differences." (*Id.* at p. 1131.) **(1a)** This right of access extends to the constitutional right to petition administrative tribunals. (*Id.* at p. 1135.)

In *Boddie* v. *Connecticut, supra,* 401 U.S. 371, the high court considered filing fees as applied to indigents seeking a divorce. Because the sole means of obtaining a divorce was through the courts, and the proceeding implicated fundamental interests related to marriage, the court held that refusing to allow indigents access was the equivalent of denying them an opportunity to be heard, in violation of the guarantee of due process, absent a sufficient countervailing justification for the state's action. (*Id.* at pp. 380-381 [91 S.Ct. at pp. 787-788].) Though finding a rational relationship between the use of court fees and the state's interests in discouraging frivolous litigation and allocating scarce resources, the court found those considerations to be insufficient to override the interest of the indigent individuals in having access to the only means for dissolving their marriage. (Cf. *United States* v. *Kras* (1973) 409 U.S. 434 [93 S.Ct. 631, 34 L.Ed.2d 626] [finding no constitutional right to a waiver of filing fees in bankruptcy proceedings, because the personal interest at stake is not fundamental and bankruptcy is not the only method available to protect that interest]; *Ortwein* v. *Schwab* (1973) 410 U.S. 656 [93 S.Ct. 1172, 35 L.Ed.2d 572] [same, with regard to proceedings for judicial review of administrative agency's welfare benefits determinations].)

In the present case, the state not only has monopolized the process of determining whether permanent public school teachers should be dismissed or suspended, but it also is the entity seeking to deprive teachers of their constitutionally protected liberty and property interests and, accordingly, is

required by the due process guarantee to provide the teacher a meaningful hearing. (*Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532, 542 [105 S.Ct. 1487, 1493, 84 L.Ed.2d 494].) In this context, the teacher's right to uninhibited access to the state-provided forum is even stronger than in litigation involving disputes between private parties. When the district sought to terminate plaintiff's employment, he was placed in the position of a defendant, and the sole means of protecting his property and liberty interests was through the initial hearing before the Commission. Under the terms of the challenged statute, however, the state will afford a teacher the hearing it is constitutionally obligated to provide only if the teacher is willing to risk incurring potentially substantial hearing costs should the teacher's defense ultimately not prevail.

The circumstance that the hearing pursuant to section 44944(e) is held in an administrative forum, and is conducted by an administrative law judge, does not diminish the importance of the hearing or the teacher's right of access. As explained previously, section 44944, subdivision (b), charges the Commission with the duty of determining whether teachers should be dismissed or suspended. The chairperson of the Commission must be an administrative law judge of the Office of Administrative Hearings—an agency within the state Department of General Services organized to fulfill the needs of other governmental agencies for administrative adjudications. (§ 44944, subd. (b); Gov. Code, §§ 11370.2, 11370.3, 11502.) "The total cost to the state of maintaining and operating the Office of Administrative Hearings shall be determined by, and collected by the Department of General Services in advance or upon such other basis as it may determine *from the state or other public agencies for which services are provided by the office*." (Gov. Code, § 11370.4, italics added.) Thus, for example, community college districts pay all charges levied by the Office of Administrative Hearings in connection with dismissal or suspension of their employees. (§§ 87677, 87683.) This statutory scheme provides a convenient mechanism whereby various state and local agencies may rely upon the expertise of employees of the Office of Administrative Hearings when providing adjudicative hearings required by due process of law. That the cost of maintaining and operating the Office of Administrative Hearings is distributed among other governmental agencies utilizing its services, however, does not alter that office's status as a state entity, funded by the state, created to provide adjudicators to decide the fate of those faced with deprivations of property and liberty interests in administrative hearings. In this regard, administrative law judges appointed pursuant to section 44944 serve a function and purpose analogous to those of judges in courts of record.

The provision in section 44944(e) that requires dismissed or suspended teachers to reimburse the state for half the cost of the administrative law

judge is a unique exception to the statutory requirement that public agencies using the services of the Office of Administrative Hearings pay the cost of such services, as well as a radical departure from the established common law tradition of public funding of adjudicators in courts and in official quasi-judicial bodies.[3] Before endorsing the novel idea that the state may require a party who ultimately proves unsuccessful in litigation to pay the cost of the judge who has heard his or her case—particularly when the due process clause requires the state to provide the hearing, because it has decided to deprive the party of a constitutionally protected interest—we should proceed with great care.

## III

Because plaintiff does not challenge the cost provision in section 44944(e) as it was applied to him in light of the particular circumstances, we are

---

[3]Other cost provisions cited in the dissenting opinion as examples of legislative "experiments" with exceptions to the tradition of public funding do not share the same serious constitutional deficiencies as the cost provision at issue in the present case. (E.g., Bus. & Prof. Code, § 7403, subd. (b) [administrative law judge has discretion, "upon presentation of suitable proof," to order barbers and cosmetologists to pay charges incurred by the Office of Administrative Hearings]; Code Civ. Proc., § 645.1, and Cal. Rules of Court, rule 244.2(a) [a court must consider economic hardship to litigants in deciding whether to order nonbinding reference of a portion of a civil proceeding, and must determine a fair and reasonable allocation of the costs of the referee]; Code Civ. Proc., §§ 1141.18, subd. (b), 1141.21, subd. (a) [a litigant must pay the cost of a judicial arbitrator (capped at $150 per day) only if he or she unsuccessfully challenges the arbitrator's decision in a subsequent trial de novo, and the cost may be waived in cases of economic hardship]; Code Civ. Proc., § 631, subd. (a) [a civil litigant may lose the right to jury trial by failing to deposit jury fees, but fees are waived if the litigant is unable to pay, and he or she still receives a full court trial without having to pay the cost of the judge]; Conn. Gen. Stat. § 10-151, subd. (d), and Va. Code Ann. §§ 22.1-309, 22.1-312, subd. J [a teacher must pay a portion of the adjudicator's fee only if the teacher invokes the option of having an alternate hearing panel, other than the school board's hearing committee, make nonbinding recommendations to the school board]; Bus. & Prof. Code, §§ 2497.5, 2661.5, 4959, 6086.10 [certain disciplined licensees *may* be required to pay costs that do not include the cost of the adjudicator]; see also *United States* v. *Kras, supra,* 409 U.S. at pp. 445-448 [93 S.Ct. at pp. 637-638] [portion of bankruptcy filing fee is allocated to referees' salary and expense fund, but Congress intended for the bankruptcy system to be self-sustaining rather than publicly funded].)

None of these provisions invariably require a losing litigant to pay the cost of the adjudicator responsible for the initial decision to deprive that litigant of a constitutionally protected interest, in the only forum in which that decision may be made. Furthermore, there is no indication that any of the provisions that assess the cost of an official adjudicator at the initial due process hearing has been reviewed and upheld as constitutional by a court of record. Even if some or all of these provisions were considered the same as section 44944(e), they apply to a tiny fraction of all the judicial and quasi-judicial proceedings in which public adjudicators, paid by the state, have the duty to decide controversies.

concerned in the present case only with the facial validity of this provision.[4]

■ In discussing the standard for evaluating a facial constitutional challenge to a statute, we stated in *Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069 [40 Cal.Rptr.2d 402, 892 P.2d 1145]: "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.] ' "To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' [Citations.]" (*Id.* at p. 1084, original italics and ellipsis.)[5]

The imposition of a cost or risk upon the exercise of the right to a hearing is impermissible if it has " 'no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them' [citation] . . . ." (*Fuller* v. *Oregon* (1974) 417 U.S. 40, 54 [94 S.Ct. 2116, 2124, 40 L.Ed.2d 642].) The statutory cost provision must have a real and substantial relation to a proper legislative goal. (*Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300].) ■ Accordingly, if section 44944(e) has no purpose other than to chill the exercise of the right of teachers to demand a hearing before they are dismissed or suspended, we must hold the statute unconstitutional on its face. As we shall explain, the actual text of section 44944(e) establishes a standard for imposing costs that invariably will chill the exercise of the right of teachers to a hearing, and its provisions thus inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. (*Tobe* v. *City of Santa Ana, supra*, 9 Cal.4th at p. 1084.)

■ The guarantee of procedural due process—a meaningful opportunity to be heard—is an aspect of the constitutional right of access to the

---

[4]Nothing in the briefs or the record supports the suggestion made by plaintiff's attorney at oral argument that he is challenging the statute both on its face and as applied. To the contrary, plaintiff stresses in his briefing that he contends the cost provision in section 44944(e) is invalid on its face, not as applied.

[5]The state's brief on the merits in this court also recites a portion of the standard for facial challenges set forth in *American Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307, 347 [66 Cal.Rptr.2d 210, 940 P.2d 797] (plur. opn. of George, C. J.), which considered whether a statute was valid "in its general and ordinary application." Because we determine that section 44944(e) is invalid under the standard set forth in *Tobe* v. *City of Santa Ana, supra*, 9 Cal.4th at page 1084, we have no occasion to address whether or in what manner the "general and ordinary application" language quoted from *American Academy of Pediatrics* might apply in the present case.

courts for all persons, without regard to the type of relief sought. (*Logan* v. *Zimmerman Brush Co.* (1982) 455 U.S. 422, 430, fn. 5 [102 S.Ct. 1148, 1154-1155, 71 L.Ed.2d 265]; *Payne* v. *Superior Court, supra,* 17 Cal.3d at p. 914.) "An individual's constitutional right of access to the courts 'cannot be impaired, either directly . . . or indirectly, by threatening or harassing an [individual] in retaliation for filing lawsuits. It is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit the [individual's] right of access.' [Citation.] The cases from [the Eighth Circuit Court of Appeals], as well as from others, make it clear that state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future. [Citations.] An individual is entitled to 'free and unhampered access to the courts.' [Citation.]" (*Harrison* v. *Springdale Water & Sewer Com'n* (8th Cir. 1986) 780 F.2d 1422, 1427-1428, fn. omitted.)[6]

We have emphasized the importance of free access to the courts as an aspect of the First Amendment right of petition. Our unanimous decision in *Pacific Gas & Electric Co.* v. *Bear Stearns & Co., supra,* 50 Cal.3d at pages 1130-1137, noted a number of limitations upon civil liability for exercising this right. "We assure all participants in litigation . . . 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions' by extending a broad privilege for publications made in the course of litigation. [Citations.] The policy of encouraging free access to the courts is so important that the litigation privilege extends . . . [citation] . . . to any action except one for malicious prosecution. [Citations.]" (*Id.* at pp. 1132-1133, fns. omitted.) The bringing of a colorable claim is not actionable as malicious prosecution. (*Id.* at p. 1131.) Similarly, a litigant is not subject to antitrust liability for petitioning any branch of government unless the petition is a sham, brought without probable cause and for the purpose of harassment. State civil law cannot constitutionally impose liability unless the "defendant's pursuit of judicial and administrative relief was so clearly baseless as to amount to an abuse of process. [Citations.]" (*Id.* at p. 1134.) "Unless the complaints and lawsuit were a sham, in the sense that they involved baseless claims that were not genuinely aimed at securing the government action petitioned for, they were privileged. [Citations.]" (*Id.* at pp. 1134-1135.)

---

[6]Furthermore, in previous decisions concerning the revocation of professional licenses, we have observed that the California Constitution requires access to appropriate judicial review of administrative determinations in order to avoid an unlawful delegation of judicial power. (See *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 361 [261 Cal.Rptr. 318, 777 P.2d 91].)

The state unquestionably may discourage and penalize frivolous tactics. Both the Legislature and the courts carefully have limited the circumstances in which such penalties may be imposed, however. In authorizing sanctions for frivolous appeals, we stated: "[C]ounsel must have the freedom to file appeals on their clients' behalf without the fear that an appellate court will second-guess their reasonable decisions. 'Free access to the courts is an important and valuable aspect of an effective system of jurisprudence, and *a party possessing a colorable claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties.*' [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 648 [183 Cal.Rptr. 508, 646 P.2d 179], italics added.) Accordingly, we held that an appeal is frivolous "only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.] [¶] However, any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. *An appeal that is simply without merit is **not** by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals.*" (*Id.* at p. 650, italics added and original italics in boldface; cf. *Pacific Gas & Electric Co.* v. *Bear Stearns & Co., supra,* 50 Cal.3d at p. 1137 ["Our legal system is based on the idea that it is better for citizens to resolve their differences in court than to resort to self-help or force. It is repugnant to this basic philosophy to make it a tort to induce *potentially meritorious litigation.*" (Italics added.)].) Only when frivolous claims result in a "useless diversion of [the] court's attention" and a "waste of [the] court's time and resources" have California courts required litigants to compensate the government for its expense in processing, reviewing, and deciding the matter. (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581] [imposing sanctions payable to the court for a frivolous appeal, including the salaries of the justices].)

 The state does not contend that the purpose of section 44944(e) is to discourage and penalize frivolous actions or tactics by teachers in administrative hearings, nor could the state make a plausible argument to that effect, given the broad language of the statute, which imposes hearing costs upon all teachers who are dismissed or suspended. Furthermore, such a provision would be unnecessary, because the Legislature and the Office of Administrative Hearings already authorize sanctions for such conduct. (Gov. Code, § 11455.30, subd. (a) [authorizing an award of expenses incurred by

another party in administrative proceedings as a result of bad faith actions or tactics that are frivolous or intended solely to cause unnecessary delay]; Cal. Code Regs., tit. 1, § 1040 [same].) Significantly, the Law Revision Commission comments regarding Government Code section 11455.30 state: "A person who requests a hearing without legal grounds would not be subject to sanctions under this section unless the request was made in bad faith and frivolous or solely intended to cause unnecessary delay." (Cal. Law Revision Com. com., 32C West's Ann. Gov. Code (1999 pocket supp.) foll. § 11455.30, p. 124.)

Thus, the Legislature has determined, as a general matter, that litigants should not be penalized for pursuing an administrative hearing simply because their position ultimately does not prevail. Nevertheless, in the present case the state has identified its interest in section 44944(e) as discouraging "meritless administrative proceedings," and thereby conserving public resources. Similarly, in the trial court, the state identified its interest as "preventing groundless challenges to disciplinary proceedings" and "meritless requests for hearing." As we shall explain, these characterizations of the interest served by the provision are misleading, and the actual interest furthered by the statute—discouraging hearing requests in which the teacher happens not to prevail—is not a proper legislative goal.

Section 44944(e) imposes half the cost of the administrative law judge upon a teacher whenever the Commission determines that the teacher should be dismissed or suspended. Moreover, even if the Commission decides that the teacher should *not* be dismissed or suspended, the teacher still must pay half the cost of the administrative law judge if the Commission's decision in favor of the teacher is reversed or vacated in a subsequent judicial proceeding.[7] (*Bassett Unified School Dist.* v. *Commission on Professional Competence* (1988) 201 Cal.App.3d 1444, 1456-1457 [247 Cal.Rptr. 865].) Thus, when the state refers to a "meritless administrative proceeding," it means simply any proceeding in which the teacher ultimately does not prevail. By definition, therefore, the hearing is not meritless until it has been completed,

---

[7]Section 44944(e) states in part:

"*In the event that the decision of the commission is finally reversed or vacated by a court of competent jurisdiction,* then either the state, having paid the commission members' expenses, shall be entitled to reimbursement from the governing board for those expenses, or the governing board, having paid the expenses, shall be entitled to reimbursement from the state.

"Additionally, either the employee, having paid a portion of the expenses of the hearing, including the cost of the administrative law judge, shall be entitled to reimbursement from the governing board for the expenses, or *the governing board, having paid its portion and the employee's portion of the expenses of the hearing, including the cost of the administrative law judge, shall be entitled to reimbursement from the employee for that portion of the expenses.*" (Italics added.)

a decision rendered, and any appeals exhausted. The objective reasonableness of the teacher's position, the teacher's subjective good faith belief in the merits of his or her position, and the circumstance that the teacher may have prevailed in whole or part at the hearing or on appeal are irrelevant under the statute. The state's purpose underlying the statute thus is not to discourage "meritless" hearings, as that terminology ordinarily would be understood, but rather to discourage "ultimately unsuccessful" efforts to prevent the district from dismissing or suspending the teacher, no matter how reasonable the teacher's position may be.[8]

At the hearing in the trial court in the present case, the judge struggled to comprehend the interest asserted by the state as underlying section 44944(e): "[I]t is alleged here that the purpose of the statute is to prevent meritless objections to termination. I have nothing before me to show that these objections were meritless. [¶] The fact that he lost doesn't make them meritless, right?" Later, the court wondered: "[I]f it was meritless, why did it take fifteen thousand dollars worth of time? On a meritless ground, you could probably knock it out in about an hour and a half." When the state reiterated that its purpose was to discourage teachers from "proceeding on a groundless basis," the court responded: "Well, once again you use the term groundless. Do you mean vexatious? I mean if we have vexatious litigants, we can control that. But there's a pretty tough test to make a determination of vexatious litigant statements." In response to the court's repeated inquiries, the state ultimately made clear that its purpose is to deter teachers from exercising their right to a hearing by making it expensive to do so: "The fact is when people are disciplined—I mean as you can see in the criminal system, when they have the right to unlimited attack, they will use it. And when it is free, it will go on as long as those steps are available."

The same purpose is reflected in the brief of amicus curiae Education Legal Alliance, which has suggested that requiring ultimately unsuccessful

---

[8]Despite the actual language of the statute imposing hearing costs upon all teachers who ultimately prove unsuccessful at any step in the proceedings, the dissenting opinion uses a variety of other terms when referring to the interests purportedly underlying the statute. For example, the opinion refers to discouraging hearing demands that "the teacher *should know* are meritless" (dis. opn., *post*, at p. 359), "encouraging teachers who *suspect* they are likely to lose their challenges to accept the district's decision" (*id.* at p. 357), deterring "*likely* meritless demands for hearing" (*id.* at p. 365), discouraging "*particularly* meritless hearing demands while encouraging *potentially* meritorious demands" (*id.* at p. 364, fn. 3), "differentially encouraging and discouraging teachers' hearing demands depending on the *strength* of the teachers' defense" (*id.* at p. 365), promoting "accurate administrative outcomes without undue taxpayer expense" (*id.* at p. 359), "avoiding the expense and educational disruption of drawn-out dismissal proceedings on nonmeritorious defenses" (*id.* at p. 360), and "improving public education and conserving public resources" (*id.* at p. 365). (Italics added.) As explained above, however, the opinion's varying phraseology does not accurately reflect the statute that is before us.

teachers to pay hearing costs gives them "a stake in the dismissal procedure," and that "[a]s a result, not every dismissal is appealed. . . . Invalidating section 44944, subdivision (e), would create an incentive for all teachers to appeal dismissal . . . ." The problem with this reasoning, endorsed by the dissenting opinion, is that the administrative hearing required by section 44944 is not an *appeal* of a dismissal that, perhaps, properly might be discouraged. Instead, it is the *initial hearing* to decide whether any dismissal should occur; the Commission's decision becomes the first and final dismissal decision of the governing board of the school district. (§ 44944, subd. (c).) If section 44944(e) were invalidated, teachers would have no more of an incentive to seek a hearing than any other individual who seeks to avoid deprivation of a constitutionally protected interest by obtaining a hearing required by due process of law. The cost provision imposes a burden upon, and therefore a *disincentive* to, the exercise of that due process right. The teacher's stake in the proceeding is the protected liberty and property interest the state is attempting to revoke. No explanation is offered why teachers, in particular, must be burdened with the additional "stake" of prospective liability for the cost of the adjudicator so that they will be deterred from obtaining the hearing to which they are entitled.

The state has no legitimate interest in discouraging a teacher from invoking the right to present, to an impartial adjudicator, evidence and nonfrivolous contentions that some or all of the district's charges are without merit, and that the teacher should not be dismissed or suspended. The administrative hearing mandated by section 44944 is intended to satisfy the due process requirement that the state provide the teacher "some pretermination opportunity to respond." (*Cleveland Board of Education* v. *Loudermill, supra*, 470 U.S. 532, 542 [105 S.Ct. 1487, 1493].) "Dismissals for cause will often involve factual disputes. [Citation.] Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect. [Citations]. [¶] . . . [*T*]*he right to a hearing does not depend on a demonstration of certain success.* [Citation.]" (*Id.* at pp. 543-544 [105 S.Ct. at p. 1494], fns. omitted, italics added.)

The Commission has broad discretion in determining what constitutes unfitness to teach and immoral conduct, and whether dismissal or suspension is the appropriate sanction. (*Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 220-222 [246 Cal.Rptr. 733, 753 P.2d 689].) "[A] disciplinary discharge often involves complex facts and may require a sensitive evaluation of the nature and seriousness of the misconduct and whether it

warrants the grave sanction of dismissal." (*Coleman* v. *Department of Personnel Administration, supra,* 52 Cal.3d at p. 1121.) Thus, a teacher attempting to discern whether an administrative hearing will be "meritless" (as that term is used by the state) must predict, in advance, whether the Commission will exercise its discretion in a particular manner. "The outcome of cases, however, cannot always be predicted. The law is never static . . . . [¶] . . . 'The difficulty is to estimate what effect a slightly different shade of facts will have and to predict the speed of the current in a changing stream of the law. The predictions and prophecies that lawyers make are indeed appraisals of a host of imponderables.' " (Note, *The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility* (1986) 61 N.Y.U. L.Rev. 300, 308-309, fns. omitted.) Even if the Commission sustains a school district's charge that provides statutory cause for disciplinary action, the Commission has discretion not to impose the discipline sought by the district. (*Fontana Unified School Dist.* v. *Burman, supra,* 45 Cal.3d at pp. 214, 221-222.) And, of course, a decision *not* to dismiss or suspend a teacher may be reversed or vacated by the superior court or the appellate courts on numerous grounds. (See, e.g., § 44945 ["The court, on review, shall exercise its independent judgment on the evidence"]; *Governing Board* v. *Haar* (1994) 28 Cal.App.4th 369, 377-378 [33 Cal.Rptr.2d 744] [the trial court need not give substantial weight to the Commission's factual findings, but rather exercises its independent judgment in assessing the evidence and weighing the credibility of witnesses].)

The state has a constitutional obligation to provide a hearing to decide whether dismissal or suspension is appropriate. A teacher also has a right to an opportunity to respond to the particular charges asserted by the district and to clear his or her name. An opportunity to challenge the state's factual determinations before an impartial and disinterested decision maker satisfies the " 'two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.' [Citations.]" (*Coleman* v. *Department of Personnel Administration, supra,* 52 Cal.3d at p. 1121.) Implicit in this right is the self-evident notion that the Commission may decide in some cases that the teacher should be dismissed or suspended, and in others that the teacher should not. Even in cases resulting in dismissal or suspension, the Commission may determine that the district has not proved all of the charges against the teacher, thus at least partially vindicating the teacher's interest in clearing his or her name. To discourage the exercise of the right to a hearing in a case in which the ultimate administrative or appellate decision may result in the dismissal or suspension of a teacher is to discourage the exercise of that right in every case.

A statute containing a standard for imposing costs that deters all teachers who ultimately prove unsuccessful is not rationally related to the goal of discouraging only patently meritless challenges to dismissal. If a teacher prevails at the administrative hearing, but the Commission's decision is reversed or vacated in subsequent judicial proceedings, it is impossible to say that the teacher was likely to lose, or to characterize the teacher's position as particularly meritless or even lacking strength. Because it is impossible to predict the outcome of a colorable challenge to dismissal or suspension, section 44944(e)'s cost provision is designed to deter, and will have a chilling effect upon, all teachers who wish to make such a challenge. This goal and effect are impermissible.

The circumstances that the statute incidentally may deter some teachers whose positions happen to be frivolous, that the state might have written the law differently to advance only legitimate goals, or that the provision does not altogether preclude teachers from obtaining hearings, do not render the statute facially valid. The actual standard contained in the statute for imposing costs is unconstitutional. The United States Supreme Court has explained that procedural due process rules " 'are shaped by the risk of error inherent in the truth-finding process as applied to the *generality of cases*, not the rare exceptions.' [Citation.] . . . Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard." (*Santosky* v. *Kramer* (1982) 455 U.S. 745, 757 [102 S.Ct. 1388, 1397, 71 L.Ed.2d 599], original italics, fn. omitted.) Thus, for example, a statute authorizing a criminal conviction under a clear and convincing standard of proof would be invalid *on its face*, even though there would be some cases, decided under that standard, in which the proof would satisfy the proper standard of proof beyond a reasonable doubt. (See *Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 280-282 [113 S.Ct. 2078, 2082-2083, 124 L.Ed.2d 182] [instructional error permitting conviction under a deficient standard of proof is reversible per se].)

Similarly, because section 44944(e)'s standard for imposing costs in teacher disciplinary proceedings is inherently flawed, it is facially invalid. The statute impermissibly chills the right to a hearing in every case in which a teacher cannot know the ultimate outcome—in other words, in every case—even if the teacher nonetheless does demand and obtain a hearing. A litigant's nonfrivolous assertion of a procedural right may not be chilled through fear of subsequent reprisals in the form of monetary penalties. (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 650.) The prospect of liability

for hearing costs could cause teachers to limit their defense and forgo vigorous advocacy, even if they are not deterred from demanding a hearing.[9]

In sum, unless the teacher's position is frivolous, there is *no such thing as a "meritless contest"* that legitimately warrants imposition of a significant cost intended to discourage hearing demands. Under the challenged statute, teachers possessing colorable arguments who exercise their right to a hearing are subjected to a penalty more severe than that typically imposed on defeated parties. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 648.) The legislative purpose of imposing the cost of the adjudicator upon teachers to deter them from requesting administrative hearings on nonfrivolous grounds is not a legitimate one.

Because the state's interest reflected in the actual language of section 44944(e)—i.e., to deter teachers from requesting hearings in cases that prove to be unsuccessful, even though the teacher's claim may be reasonable— renders the statute unconstitutional, the incidental effect of conserving public resources or recouping costs cannot save the law. (*Boddie* v. *Connecticut, supra,* 401 U.S. at p. 382 [91 S.Ct. at p. 788]; *Payne* v. *Superior Court, supra,* 17 Cal.3d at pp. 920-921.) Section 44944(e) is unconstitutional on its face.

## IV

 Even if the state's goal of discouraging ultimately unsuccessful hearings were a legitimate one—or if we could ignore that goal altogether and focus instead upon the state's interest in conserving public resources or

---

[9]A recent Court of Appeal decision illustrates how a monetary penalty may have such an impermissible chilling effect upon a constitutional right, even if it does not preclude the exercise of that right. In *People* v. *Lyon* (1996) 49 Cal.App.4th 1521 [57 Cal.Rptr.2d 415], a convicted defendant was required to pay, as restitution, the victim's costs incurred in resisting permissible discovery efforts taken by the defendant during his criminal proceeding. The Court of Appeal held that the imposition of this cost was impermissible, because it could have a chilling effect upon the exercise of the right to effective assistance of counsel. The opinion states: "Knowledge by counsel that the client, if convicted, could be charged with the costs incurred by the victim in opposing discovery might well adversely affect the manner, extent, and degree of that preparation. In essence, charging a criminal defendant with the victim's costs in resisting discovery could have a chilling effect on the exercise of a constitutional right. To include this type of expense as victim restitution would, in our view, conflict with a defendant's constitutional right to prepare and present a defense by placing an undue burden on counsel's efforts and obligation to provide effective assistance." (*Id.* at p. 1526, fn. omitted.)

This decision illustrates the flaw in the dissenting opinion's repeated, unsupported assertion that a plaintiff must present evidence quantifying the deterrent effect of a procedural provision before a court may determine that the provision impermissibly chills the exercise of a constitutional right.

one of the other goals that have been identified—section 44944(e) still would deprive teachers of the fundamental fairness guaranteed by due process of law.

■ The facial validity of the procedures for terminating public employees depends upon a balancing of the competing interests at stake. These include the private interest affected by the official action, the government's interest, and the risk of an erroneous deprivation of the private interest, including the probable value, if any, of additional or substitute procedural safeguards and the burdens such safeguards would entail. (*Cleveland Board of Education* v. *Loudermill, supra*, 470 U.S. at pp. 542-543 [105 S.Ct. at pp. 1493-1494]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 334-335 [96 S.Ct. 893, 902-903, 47 L.Ed.2d 18].)

■ Even when considering a facial challenge to a procedural scheme, a court must determine whether the procedures "provide sufficient protection against erroneous and unnecessary deprivations of liberty" and property. (*Schall* v. *Martin* (1984) 467 U.S. 253, 274 [104 S.Ct. 2403, 2415, 81 L.Ed.2d 207].) The balancing analysis set forth in cases such as *Mathews* v. *Eldridge, supra*, 424 U.S. 319, requires an examination of procedures to determine whether they assure a minimum *overall* standard of fairness in the particular context. "[P]rocedural due process rules are shaped by the risk of error inherent in the generality of cases, not the rare exceptions." (*Id.* at p. 344 [96 S.Ct. at p. 907].) In considering facial challenges to procedural schemes, the United States Supreme Court balances the competing interests to ascertain whether the procedures meet due process requirements—not simply whether there are instances falling within the scheme in which a particular result would be constitutionally permissible. (E.g., *Cleveland Board of Education* v. *Loudermill, supra*, 470 U.S. at pp. 536-537, 542-546 [105 S.Ct. at pp. 1490-1491, 1493-1495].) Thus, although we may not invalidate a statute simply because in some future hypothetical situation constitutional problems may arise (*Tobe* v. *City of Santa Ana, supra*, 9 Cal.4th at p. 1084), neither may we ignore the actual standards contained in a procedural scheme and uphold the law simply because in some hypothetical situation it might lead to a permissible result. For example, a procedure that mandated dismissal of a teacher whenever the principal of the school appeared at the hearing and accused the teacher of serious misconduct would result in some, and perhaps many, justified terminations. It does not follow, however, that this procedure would be facially valid simply because we may not assume principals' accusations generally will be groundless.

■ With these principles in mind, we shall examine the relevant interests at stake.

"First, the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. [Citations.] While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job. [Citation.]" (*Cleveland Board of Education* v. *Loudermill, supra*, 470 U.S. at p. 543 [105 S.Ct. at p. 1494].) Indeed, teachers dismissed for immoral conduct suffer revocation of their teaching certificates. (§ 44947.) In addition to having a protected property interest in continued employment, a teacher facing charges that implicate his or her good name, reputation, honor, or integrity—and thus constitute an impediment to future employment—has a protected liberty interest as well. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 572-573 [92 S.Ct. 2701, 2706-2707, 33 L.Ed.2d 548]; *Riveros* v. *City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1359 [49 Cal.Rptr.2d 238]; *Binkley* v. *City of Long Beach* (1993) 16 Cal.App.4th 1795, 1807 [20 Cal.Rptr.2d 903]; see *Coleman* v. *Department of Personnel Administration, supra*, 52 Cal.3d at p. 1119 ["When loss of the vested right to continued state employment results from a disciplinary dismissal, the attendant stigma of the discharge may threaten the affected employee's future livelihood."].) "Because a protected 'liberty' interest is implicated, due process requires, at a minimum, that [the employee] be given an opportunity to refute the charges and clear his name. [Citations.]" (*Binkley* v. *City of Los Angeles, supra*, 16 Cal.App.4th at p. 1807.) As discussed in the preceding part, teachers also have a private interest in meaningful access to the administrative forum so that they may present their side of the case and invoke the discretion of the decision maker. The teacher's interests clearly are more substantial than the mere loss of money at stake "in the mine run of cases," where the state's need for revenue to offset costs, by itself, ordinarily satisfies the rationality requirement. (See *M. L. B.* v. *S. L. J.* (1996) 519 U.S. 102, 123-124 [117 S.Ct. 555, 567-568, 136 L.Ed.2d 473].)

The second factor in this procedural due process analysis is the state's interest in the expeditious removal of unsatisfactory teachers and the avoidance of administrative burdens. The state does not appear to be concerned with delay occasioned by demands from teachers for hearings. If a teacher poses a risk of harm to students, such as where charges involve serious misconduct, the teacher may be suspended immediately. (§ 44939.) According to the state, its primary interest in imposing hearing costs upon teachers is to avoid or minimize the financial burden on the state of administrative hearings, by discouraging unsuccessful challenges. Conserving judicial resources is a legitimate interest (*Bankers Life & Casualty Co.* v. *Crenshaw* (1988) 486 U.S. 71, 82, 85 [108 S.Ct. 1645, 1652-1653, 1654, 100 L.Ed.2d

62]), as is conserving public funds devoted to providing administrative hearings. In light of the circumstance that the state traditionally has funded the cost of judges in both judicial and quasi-judicial proceedings, however, its interest in requiring teachers, alone, to bear a major share of the financial burden of providing administrative law judges in disciplinary proceedings cannot be very strong. As we have seen, the state's interest in encouraging peaceful resolution of disputes through ready access to the legal system is reflected in the long-standing practice of publicly funding the provision of judges. Moreover, in this context the Constitution compels the state to undertake the administrative burden of providing teachers with a hearing to challenge the dismissal. Shifting the state's cost of this constitutional obligation to the individual entitled to the hearing, simply because the individual ultimately did not prevail, is a weak interest to be balanced against the other interests at stake.

The third factor we consider is the risk of an erroneous termination under the procedures adopted by the state. Section 44944(e) poses a substantial risk of erroneous terminations, because it deters teachers with colorable claims from obtaining a hearing and vigorously presenting their side of the case. The possibility that a prevailing teacher might recover attorney fees does little to reduce the risk of error. The prospect of recovering attorney fees is difficult to view as a reward or an encouragement for demanding a hearing, because this provision simply leaves the teacher in the same financial condition in which he or she began. Assessing half the cost of the administrative law judge, on the other hand, imposes an indeterminate, substantial, additional debt upon the teacher at the very time he or she has been deprived of a job. Therefore, the risk that teachers will forgo hearings or limit their defense against the district's charges is significant.

In connection with the risk of erroneous results, we also must consider the "probable value, if any, of additional or substitute procedural safeguards" and the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews* v. *Eldridge, supra,* 424 U.S. at p. 335 [96 S.Ct. at p. 903].) The statute contains no procedures for assessing whether the teacher's position has potential merit or whether the costs of the hearing exceed the teacher's ability to pay. We may not assume on this facial challenge that teachers who are facing the loss of their jobs will be able to pay half the cost of the hearing, nor may we assume that the cost provision will not have a chilling effect upon teachers with colorable claims. The question is whether the procedural scheme provides adequate protections against erroneous terminations resulting from a teacher's failure to exercise his or her right to a meaningful hearing. It provides none.

Considering the minimal burden that such safeguards would impose, together with the importance of the teacher's liberty and property interests at stake, the *Mathews* balancing analysis requires a determination that the cost provision in section 44944(e) is invalid on its face.[10]

The suggestion that any constitutional infirmities in section 44944(e) should be challenged on a case-by-case basis, as applied to particular teachers, ignores the requirements of *Mathews* v. *Eldridge, supra,* 424 U.S. 319, which requires that the procedural scheme itself be adequate to ensure a meaningful hearing. It would be illogical to expect or require a teacher to file an action alleging that he or she lacks the resources to pay the costs of the administrative hearing, because the teacher also would lack the resources to litigate the threshold matter in superior court. The availability of an as-applied challenge therefore is no safeguard against the chilling effect of the cost provision. Furthermore, one of the primary purposes of section 44944 was to remove the initial disciplinary hearing from the jurisdiction of the superior court, thereby reducing the burden and costs of litigating dismissal proceedings. (Legis. Counsel's Dig., Assem. Bill No. 293, 3 Stats. 1971 (Reg. Sess.) Summary Dig., p. 54.) It is difficult to imagine that the Legislature would have preferred multiple superior court actions to ascertain whether application of the cost provision is unconstitutional in each particular case. Finally, any action challenging section 44944(e), as applied to a particular teacher, also would require an assessment of the probable merit of the teacher's position. As mentioned previously, such an assessment is virtually impossible unless the teacher's position is frivolous, and existing procedures already authorize sanctions for frivolous tactics. A superior court

---

[10]According to the dissenting opinion, the state contends that the only substitute procedural safeguard we should consider in the *Mathews* balancing analysis is the complete invalidation of section 44944(e), including the provision requiring districts to pay the attorney fees of teachers who are not suspended or dismissed. The state, however, simply contends that invalidating section 44944(e) in its entirety would increase the risk of erroneous outcomes, because it contains the attorney fee provision, which encourages teachers with meritorious positions to vigorously contest the district's charges. Nothing in the state's brief, *Mathews,* or other law suggests that the additional or substitute procedural safeguards we should consider are limited to those contained in the challenged procedural scheme itself.

The issue whether section 44944(e)'s attorney fee provision survives invalidation of its hearing cost provision is not properly before us. Neither party has briefed the issue, and the lower courts did not consider it. (See *People* v. *Crittenden* (1994) 9 Cal.4th 83, 153 [36 Cal.Rptr.2d 474, 885 P.2d 887] ["Generally, we do not consider contentions unsupported by argument or authority."].) In any event, we reject the state's contention that elimination of the attorney fee provision, together with the cost provision, would increase the risk of erroneous results. A teacher has a greater degree of control over the amount of his or her attorney fees than the amount of hearing costs, and the teacher may avoid liability for attorney fees by seeking representation by an employee organization or pro bono counsel, or through self-representation.

judge also would have no means of ascertaining whether a potentially meritorious position, leading to a favorable administrative decision, might be overturned in subsequent judicial proceedings. Thus, the availability of as-applied challenges to the cost provision is wholly illusory.

In considering the facial validity of a measure that burdened litigants' access to the courts, the United States Supreme Court rejected arguments similar to those made by the state in the present case. In *Lindsey* v. *Normet* (1972) 405 U.S. 56 [92 S.Ct. 862, 31 L.Ed.2d 36], the court reviewed Oregon's statutory scheme for unlawful detainer actions. Under the statute, a landlord could evict a tenant after a summary judicial proceeding at which the sole issue was whether the tenant had failed to pay rent. The tenant could appeal such a ruling and obtain a full trial on the merits only by posting security in an amount equal to twice the rental value of the property from the commencement of the action to final judgment. In *Lindsey*, before statutory eviction proceedings began, a number of tenants filed a class action in federal district court, seeking a declaratory judgment that the statutory bond requirement was unconstitutional on its face. (*Id.* at pp. 58-64 [92 S.Ct. at pp. 866-869].) The high court held the statute unconstitutional. Without considering the particular financial circumstances of the tenants, the precise amount of the bond required, or the extent to which tenants chose not to appeal because of the bond requirement, the high court stated: "[T]he State has not sought to protect a damage award or property an appellee is rightfully entitled to because of a lower court judgment. Instead, it has automatically doubled the stakes when a tenant seeks to appeal an adverse judgment in an [unlawful detainer] action. The discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious. For them, as a practical matter, appeal is foreclosed, no matter how meritorious their case may be. *The nonindigent [unlawful detainer] appellant also is confronted by a substantial barrier to appeal faced by no other civil litigant in Oregon.*" (*Id.* at pp. 78-79 [92 S.Ct. at p. 877], fn. omitted, italics added.)

Similarly, in the present case, both indigent and nonindigent teachers are confronted with a substantial barrier to an administrative hearing faced by no other public employee—or litigant—in the state. The circumstance that the liability for and cost of the administrative law judge is not determined until the hearing is completed and all appeals exhausted only heightens the chilling effect of this barrier. As the Court of Appeal stated: "The amount of the obligation is open-ended. After requesting a hearing, an accused teacher has little or no control over the costs to be imposed. The teacher cannot limit the school district's prosecution of the charges and can limit his or her

response only at the risk of failing to be fully heard. Thus, the decision to exercise the right to a hearing imposes an indeterminate but substantial potential obligation upon an accused teacher."[11] With every witness called and argument made on the teacher's behalf, and every minute during which the teacher cross-examines the district's witnesses, the teacher's potential liability for the hourly charges of the administrative law judge increases. Thus, as mentioned previously, even if section 44944(e) does not *preclude* a teacher from demanding a hearing, it creates an incentive not to make such a demand and not to mount a rigorous defense.

In the analogous context of the state's recoupment of attorney fees paid on behalf of indigent criminal defendants, courts have held that the facial validity of such provisions requires a waiver of costs for those defendants unable to pay, so that a defendant will not be deterred from exercising the right to appointed counsel. (*Fuller* v. *Oregon, supra,* 417 U.S. at p. 53 [94 S.Ct. at p. 2124] [recoupment statute was "carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so"]; *Alexander* v. *Johnson* (4th Cir. 1984) 742 F.2d 117, 124 [statutory scheme may not require repayment as long as the defendant remains indigent]; *Olson* v. *James* (10th Cir. 1979) 603 F.2d 150, 155 [recoupment statute must contemplate proceedings to determine the financial condition of the accused and reasonableness of the fees].) A statutory scheme requiring payment for the cost of the *adjudicator* should be subject to even more stringent requirements, because the affected individual has no alternative (such as seeking low-fee or pro bono counsel, or self-representation) to an impartial decision maker. Section 44944(e) contains no provision requiring the Commission to consider the financial condition of the teacher before imposing costs, and we may not assume that teachers who have lost their jobs will have adequate financial resources when they are billed for half the cost of the administrative law judge.

Although neither *Rankin* v. *Independent School Dist. No. I-3* (10th Cir. 1989) 876 F.2d 838 (*Rankin*), nor *Winston* v. *City of New York* (2d Cir. 1985) 759 F.2d 242 (*Winston*), is exactly on point, these decisions provide persuasive guidance. The court in *Rankin* considered an Oklahoma statute containing a cost provision similar to the one in this case, except that half the cost

---

[11]The trial court made similar observations: "The question is can he be subjected to this sort of amorphous kind of liability which . . . he may not even know of in the sense of how much it's going to be. [¶] Usually fees, filing fees and costs and so forth are fixed and are nominal, in essence, because they don't include, say, the services of the judge. . . . [¶] Or the time for the Reporter or the . . . Clerk and so forth, or even half of it. I'm just not gonna charge you for that. Because how do you know how long I'm going to fiddle around with this case . . . . You don't have any control over that. I could take it under submission and ruminate about it for a month and charge you . . . $50,000. But I wouldn't."

of the hearing was imposed upon the teacher whether or not the hearing resulted in dismissal. The court held that the statute was unconstitutional on its face; the decision emphasized the importance of the teacher's property and liberty interests, the state's monopolization of the process by which those rights could be protected, the unrestricted cost to the teacher, and the relative unimportance of the state's interest in recouping its costs. (*Rankin, supra,* 876 F.2d at pp. 840-841.) Although liability for costs was not restricted to ultimately unsuccessful teachers, as in section 44944(e), the *Rankin* decision remains instructive because of the difficulty in predicting results and the lack of any provision in section 44944(e) for reduction or elimination of costs in the case of partial success.[12]

Under the provisions at issue in *Winston, supra,* 759 F.2d 242, dismissed teachers forfeited their pension benefits but could retain them if they resigned before a hearing. The court found that the scheme unquestionably had a chilling effect on the right to challenge the district's charges. "A teacher's stakes on such a 'bet' are so high, that given these poor odds, the City has effectively eliminated that teacher's access to a forum to vindicate his or her innocence. [Citation.]" (*Id.* at p. 246.) Although the court apparently was considering an as-applied challenge to the statute, it held that the city was required to redraft the provision to eliminate the choice of resigning and retaining the pension, or to add a provision requiring a separate determination whether the reasons for discharge warranted forfeiture. (*Id.* at pp. 246-247.) Thus, its conclusion that the potential chilling effect of the provision rendered it invalid does not appear to have rested upon the particular amount of the pension benefit at stake.

Our research has disclosed only one reported decision in the nation that has upheld a provision requiring a losing litigant to pay the cost of the adjudicator. In *Sears* v. *Romer* (Colo.Ct.App. 1996) 928 P.2d 745, an individual challenged various provisions regulating "outfitters," who were defined as persons providing equipment, supplies, or services in connection with hunting wildlife. One statute required an outfitter to pay the entire cost of any administrative proceeding resulting in the denial or revocation of

[12]*Rankin* was followed in *Ames* v. *Board of Education* (D.Kan., Mar. 6, 1992, No. 91-1278-K) 1992 WL 75199, which determined that a Kansas statute imposing similar costs upon teachers was unconstitutional on its face. The court explained: "[T]he state has created the need for a due process hearing. Thus, the state cannot penalize [the teacher] for exercising a right which it is constitutionally required to give him. [¶] . . . [T]he language of the statute . . . does not provide for a waiver of payment upon the showing of an inability to pay. Therefore, the court concludes that the cost-sharing provisions . . . are unconstitutional on their face and impose a substantial and unjustified penalty on the exercise of a constitutional right." (*Id.* at p. *7.)

registration. In a divided decision, the intermediate appellate court held the cost provision did not deny equal protection of the laws, because it was rationally related to the state's interest in discouraging statutory violations, protecting the state's financial resources, and deterring frivolous claims or defenses. The majority cited virtually no authority in support of its conclusion and did not consider whether the cost provision denied procedural due process or had an impermissible chilling effect upon the registrant's right to a hearing. (*Id.* at pp. 748-749.)

A concurring and dissenting opinion expressed the view that the cost of the administrative law judge should not be imposed upon registrants, because the statute did not provide expressly for payment of this cost. The minority opinion also observed: "I am unaware of any decisional law that has expanded the definition of costs to include the *pro rata* costs of maintaining the courthouse building, its staff, and the judge's salary. [Citation.] . . . [¶] This is because a smooth-running and accessible judicial system is an integral part of our society from which everyone benefits. Since everyone benefits from the rule of law, everyone contributes to its operation. This is the legislative intent behind the cost statute." (*Sears* v. *Romer, supra,* 928 P.2d at pp. 752-753.) Expressing concerns similar to those noted by the Court of Appeal in the present case, the concurring and dissenting opinion further stated: "I also am concerned about the arbitrariness of assessing such items as costs. Here, the record reflects that the [administrative agency] has collected similar costs in two previous cases. In one case, the actual cost of the ALJ [administrative law judge] and legal assistant was $148. In the other, however, it was $2279.75. This wide disparity suggests that the complexity of the case and the existence of evidentiary issues govern the amount assessed, rather than the gravity of the offense. Ironically, blatant violators with clearcut violations likely would pay the least in costs, whereas those outfitters whose cases are close or complex could be assessed large bills for time and research by the judge and the judge's assistant or clerk. Imposing costs in such a manner thus seems arbitrary and capricious." (*Id.* at p. 753.)

Because the majority opinion in the foregoing case did not discuss controlling authority or even consider the registrant's due process rights, it provides little if any support for the state's position in the present case. We find persuasive the reasoning of the concurring and dissenting opinion, which did evaluate the operation and effect of the cost provision upon those seeking to invoke the right to an administrative hearing.

The invalidity of a provision requiring dismissed public teachers to pay for the public cost of the administrative law judge is apparent when we

consider decisions holding that even private employees who have agreed to private arbitration of statutory wrongful termination claims cannot be compelled to pay half the cost of the arbitrator. The United States Supreme Court has upheld agreements requiring employees to arbitrate federal statutory claims, as long as the employee effectively may vindicate the statutory cause of action in the arbitral forum. (*Gilmer* v. *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 26-28 [111 S.Ct. 1647, 1652-1653, 114 L.Ed.2d 26].) In *Cole, supra*, 105 F.3d 1465, the court considered an issue not raised in *Gilmer*: whether an employer could condition employment upon acceptance of an arbitration agreement requiring the employee to submit statutory claims to arbitration *and* requiring the employee to pay all or part of the arbitrator's fees. The court observed that under the arbitration rules at issue in *Gilmer*, the industry's standard practice was for employers to pay all the fees of the arbitrators, and other fees imposed upon the employee routinely were waived in the event of financial hardship. "Thus, in *Gilmer*, the Supreme Court endorsed a system of arbitration in which employees are not required to pay for the arbitrator assigned to hear their statutory claims. There is no reason to think that the Court would have approved arbitration in the absence of this arrangement. Indeed, we are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case. Under *Gilmer*, arbitration is supposed to be a reasonable substitute for a judicial forum. Therefore, it would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court." (*Id.* at p. 1484.)

The court in *Cole* also distinguished the cost of the arbitrator from other costs routinely imposed upon litigants. "There is no doubt that parties appearing in federal court may be required to assume the cost of filing fees and other administrative expenses, so any reasonable costs of this sort that accompany arbitration are not problematic. However, if an employee . . . is required to pay arbitrators' fees ranging from $500 to $1,000 per day *or more* [citation], in addition to administrative and attorney's fees, is it likely that he will be able to pursue his statutory claims? We think not. [Citation.] There is no indication in [the arbitration] rules that an arbitrator's fees may be reduced or waived in cases of financial hardship. These fees would be prohibitively expensive for an employee . . . , especially after being fired from his job, and it is unacceptable to require [the employee] to pay arbitrators' fees, because such fees are unlike anything that he would have to pay to pursue his statutory claims in court." (*Cole, supra*, 105 F.3d at p.

1484, fns. omitted, original italics.) Accordingly, the court construed the arbitration rules as requiring the employer to bear the entire cost of the arbitrator. (*Id.* at p. 1485; see also *Paladino* v. *Avnet Computer Technologies, Inc.* (11th Cir. 1998) 134 F.3d 1054, 1062 [agreeing with *Cole* that requiring employees to pay half or more of the cost of the arbitrator would violate the congressional policy underlying the statute].)

Although the court's conclusion in *Cole* did not rest upon the requirements of procedural due process, the court was required to consider whether arbitration served as a reasonable substitute for a judicial forum. If employees in the private sector cannot be compelled to pay the cost of private arbitrators when seeking to vindicate statutory rights in the arbitral forum, then certainly public employees seeking to vindicate constitutionally based interests in an official quasi-judicial forum cannot be required to compensate the state for the cost of the administrative law judge. As in *Cole*, such fees would be unlike anything teachers would have to pay to protect their constitutional interests in court.

In summary, the competing interests we must balance are the teacher's constitutionally protected property and liberty interests, the state's desire to limit the cost of hearings resulting in dismissal or suspension, the risk of erroneous results, and the value and burdens of additional procedural safeguards. These factors weigh heavily against the validity of section 44944(e). A teacher's interests in avoiding dismissal, in clearing his or her name in the face of charges of incompetence or misconduct, and in invoking the discretion of an impartial decision maker are substantial. The state has little interest in avoiding the cost of providing a legal system with impartial adjudicators as a means for the peaceful resolution of disputes, and, indeed, in this context is constitutionally required to provide such adjudicators. The availability of and access to judicial and quasi-judicial bodies to decide controversies and to safeguard constitutionally protected interests against arbitrary or erroneous deprivations by the state are fundamental components of our society. "[T]he state also 'shares the employee's interest in avoiding . . . erroneous decisions.' [Citation.]" (*Coleman* v. *Department of Personnel Administration, supra,* 52 Cal.3d at p. 1122.) Unless the teacher's or the district's position is frivolous, it is difficult, if not impossible, for a teacher to determine in advance whether the Commission will vote for dismissal or suspension, or whether a favorable decision might be overturned on judicial review. In light of the state's own assertion that its express goal underlying section 44944(e) is to discourage *all* hearings that result in dismissal or suspension, and the actual language of the statute reflecting that goal, there can be little doubt that this provision generally chills the exercise of the right

to a hearing and vigorous advocacy on behalf of the teacher. The statute poses a tangible risk that teachers will be dismissed or suspended—and that baseless charges against teachers will stand—simply because the teacher fears incurring liability for the cost of the adjudicator. The value of the additional procedural protections mentioned above is significant, and the burdens associated with such procedures are slight.

We conclude that any legitimate interest the state may have in conserving resources or discouraging hearings that happen to result in an administrative or judicial decision against a teacher does not outweigh the teacher's strong interest in presenting his or her side of the case and in invoking the discretion of the adjudicator. Nor does this state interest outweigh the public's interest in preventing erroneous or arbitrary dismissals or suspensions of teachers in our public schools.

V

Section 44944(e)'s requirement that dismissed or suspended teachers pay half the cost of the hearing, including the cost of the administrative law judge, necessarily and impermissibly deters teachers from exercising their due process right to a hearing. The state's asserted interest in discouraging ultimately unsuccessful hearings is not a legitimate one, and, in any event, that interest and the interest in recouping the costs of providing the adjudicator do not outweigh the competing interests at stake in this context. Therefore, the cost requirement presents a total and fatal conflict with controlling constitutional principles and is invalid on its face. (*Tobe* v. *City of Santa Ana, supra,* 9 Cal.4th 1069, 1084.)

The judgment of the Court of Appeal is affirmed.

Mosk, J., Kennard, J., and Baxter, J., concurred.

**WERDEGAR, J.**—I respectfully dissent. The state has given permanent teachers substantial protection, both substantive and procedural, against arbitrary dismissal. An unavoidable consequence is that school districts must incur significant costs—financial, in loss of morale, and in disruption of the educational process—in order to terminate incompetent or misbehaving teachers. Education Code section 44944, subdivision (e) is an attempt, albeit an imperfect one, to reduce those costs in the more egregious cases by encouraging teachers who suspect they are likely to lose their challenges to accept the district's decision or seek a settlement, rather than delay termination through administrative and subsequent judicial appeals. The statute does so *not* by denying any teacher a full evidentiary hearing, or even by

requiring the teacher to pay any prehearing filing fee, but only by charging a losing teacher, *after the hearing*, with one-half of certain hearing costs. The individual plaintiff in this case received a full and fair hearing before his termination, and plaintiffs have introduced no evidence that *any* teacher—much less any teacher with a colorable defense to the dismissal charges—has *ever* been deterred from asking for a hearing. On this record, I am unable to conclude the state's attempt to further its legitimate interests is constitutionally impermissible.

## I

Before articulating my own analysis of the constitutional question, I will directly address the reasoning of the majority opinion. The majority opinion concludes Education Code section 44944, subdivision (e) (section 44944(e)), on its face, deprives teachers of due process. The opinion's complicated discussion may be reduced to a fairly simple proposition: section 44944(e) fails constitutionally because the statutory standard for imposing costs is whether the teacher is ultimately dismissed, not whether his or her defense to the charges was frivolous. "[B]ecause section 44944(e)'s standard for imposing costs in teacher disciplinary proceedings is inherently flawed, it is facially invalid." (Maj. opn., *ante*, at p. 345.) I disagree.

While section 44944(e) may represent a less than ideal approach to the allocation of costs in teacher disciplinary hearings, the majority opinion's next step is a non sequitur. That a statute is imperfect does not make it constitutionally invalid; otherwise, we might soon clear the state's legal codes of enforceable laws. The question before us is not whether section 44944(e) could be improved, but whether plaintiffs have demonstrated that the posthearing imposition of partial hearing costs on a losing teacher is such a high barrier to a hearing, and so unjustified by legitimate state interests, that it can be said to deprive teachers of "a meaningful opportunity to present their case." (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 349 [96 S.Ct. 893, 909, 47 L.Ed.2d 18].)

To repeat, the individual plaintiff in this case demanded and received a full evidentiary hearing prior to his dismissal. He does not, and cannot, argue the potential for cost-sharing chilled *his* exercise of the right to a hearing. As the majority opinion acknowledges, therefore, plaintiffs can prevail on their facial challenge only by showing the statute "inevitably" and "total[ly]" (*Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145]) deprives teachers of a meaningful opportunity to defend against dismissal. (Maj. opn., *ante*, at p. 338.) At the least, plaintiffs must

show that section 44944(e) deprives teachers of the hearing due them in "'the *generality of cases*'" (*Santosky* v. *Kramer* (1982) 455 U.S. 745, 757 [102 S.Ct. 1388, 1397, 71 L.Ed.2d 599], italics added in *Santosky*). (Maj. opn., *ante*, at p. 345.) Plaintiffs have not met any of these burdens. Indeed, they have presented no proof that *any* teacher has been denied a hearing as a result of the cost-sharing provision of section 44944(e).

The majority opinion nonetheless avers that section 44944(e) "*invariably* will chill the exercise of the right of teachers to a hearing . . . ." (Maj. opn., *ante*, at p. 338, italics added.) As a factual statement, this would be not merely unwarranted by the evidence, but demonstrably wrong, since we know at least one teacher, Mr. Daloyan, was not chilled—that is, deterred—in the exercise of his right to a hearing. As it turns out, however, the majority does not really mean to say that teachers will invariably forgo a hearing rather than face possible sharing of partial hearing costs, but merely that the cost provision "could cause teachers to limit their defense and forgo vigorous advocacy." (Maj. opn., *ante*, at p. 346.) While anything "could" happen, I would assume, instead, that the possibility of bearing additional costs if one loses an administrative contest would spur one to make all reasonable efforts to win. As for unreasonable efforts—those calculated merely to lengthen the contest or delay the outcome, with little likelihood of success—deterring such efforts would be both desirable and constitutionally permissible. In short, I cannot agree with the majority that a procedural statute deprives disputants of due process simply because it creates an incentive to pursue only cost-effective strategies and tactics.

The majority's central argument, as I understand it, is that despite all the state's protestations to the contrary, the only interest served by section 44944(e) is to deter all hearing requests "in which the teacher happens not to prevail." (Maj. opn., *ante*, at p. 341.) According to the state's brief, the purpose of section 44944(e) is not to discourage hearing demands in general, but only those the teacher should know are meritless. Moreover, according to the state, because the statute also provides for government payment of a winning teacher's attorney fees, it actually "encourages teachers with meritorious defenses to vigorously contest the charges." As expressed by counsel at oral argument, the state's asserted purpose for section 44944(e) is "to promote accurate administrative outcomes without undue taxpayer expense."

Because the statute is not limited to frivolous hearing demands, the majority rejects the state's asserted purpose out of hand and posits a different, obviously indefensible purpose: to deter all unsuccessful teacher requests, meritless or not. (Maj. opn., *ante*, at pp. 341-342.) Having set up this

straw man, the majority proceeds, vigorously and at length, to knock it down. (*Id.* at pp. 342-346.) The majority's analysis thus confuses two distinct questions: first, whether the asserted purpose of a statute is legitimate, and, second, if so, whether the statute is sufficiently tailored to that purpose so as to pass muster under the appropriate standard of constitutional review. Even assuming section 44944(e) is less than ideally tailored to its purpose of deterring meritless demands and encouraging meritorious ones, that does not render the state's asserted purpose illegitimate. In my view, the state indisputably has a legitimate interest in avoiding the expense and educational disruption of drawn-out dismissal proceedings on nonmeritorious defenses. Whether the statute is so inexactly framed that its legitimate effects are outweighed by its deterrence of potentially meritorious teacher demands is a separate question, which I address later in this opinion.

The majority opinion may also be understood to claim that section 44944(e) is constitutionally illegitimate because it is "unique," "radical" or "novel" (maj. opn., *ante*, at pp. 336-337), either in that the costs it imposes include part of the cost of the adjudicator (*id.* at pp. 334-336), or in that it imposes costs on the losing party without requiring the party's position to have been frivolous (*id.* at pp. 340-341). In neither respect, however, is the statute unique, radical, or even particularly novel.

As a general matter, the American legal tradition might be said to favor public payment of the costs of adjudication in a public forum. Section 44944(e), however, is not unique among California statutes in requiring an administrative contestant to bear part of the cost of adjudication. (See, e.g., Bus. & Prof. Code, § 6086.10, subd. (b)(3) [disciplined attorney is to pay "charges determined by the State Bar to be 'reasonable costs' of investigation, hearing, and review"]; § 7403, subd. (b) [disciplined barber or cosmetologist to pay "charges incurred by the Office of Administrative Hearings for hearing the case and issuing a proposed decision" as well as investigative costs of disciplinary board and Attorney General]; § 2661.5, subd. (a) [physical therapist disciplined for unprofessional conduct may be ordered to pay "actual and reasonable costs of the investigation and prosecution of the case" before disciplinary board]; § 2497.5, subd. (a) [same for podiatrists]; § 4959, subd. (a) [same for acupuncturists];[1] see also Conn. Gen. Stat. § 10-151, subd. (d) [if tenured teacher demands hearing before impartial

---

[1] The last three listed statutes are not explicit as to whether the assessable costs include the costs of *hearing*. The general statute on recovery of administrative costs in professional or business disciplinary procedures is Business and Professions Code section 125.3. It applies unless the specific licensing act for a given profession includes a cost recovery provision. (*Id.*, subd. (j).) Section 125.3 provides for recovery of costs of "investigation and enforcement" (subd. (a)), but only "up to the date of the hearing" (subd. (c)), and hence does not appear to

panel, each party pays its own panel member's costs and "shall share equally the fee of the third panel member or hearing officer and all other costs incidental to the hearing"]; Va. Code Ann. § 22.1-312, subd. J [if teacher requests factfinding panel, "[t]he expenses of the panel shall be borne one-half by the school board and one-half by the teacher"].)

In other dispute resolution contexts, as well, disputants are sometimes required to bear part or all of the adjudicator's expenses. (See, e.g., Code Civ. Proc., §§ 645.1 [court may order fees of court-appointed referee to be paid by parties in any fair and reasonable manner]; 631 [party payment of jury fees in civil trial]; 1033.5, subd. (a)(1) [jury fees allowable as costs to prevailing party]; 1141.21, subd. (a)(i) [in judicial arbitration, party who demands trial de novo but obtains result less favorable than the arbitration award pays the arbitrator's compensation].)

I do not mean to suggest each of these provisions is in all respects indistinguishable from section 44944(e), or that each in all its applications necessarily meets due process standards. My point is merely that, notwithstanding our traditional expectation that the public will bear the cost of providing the adjudicator for a public forum, the California Legislature, like those elsewhere, has experimented with various exceptions to that tradition, especially in the area of administrative disciplinary proceedings. Analogously, although California follows the traditional "American rule" that each party to litigation pays its own attorney fees (7 Witkin, Cal. Procedure (4th ed. 1997) Judgments, § 145, p. 659), the Legislature there, too, has experimented with a variety of exceptions to that rule, shifting payment of attorney fees to the losing party in a large number of specified actions and circumstances. (See id., §§ 162, 190-201, pp. 683-684, 715-733.) Unless we are to draw a bright line requiring all public adjudicators' fees and expenses to be borne by the public—a step even the majority opinion stops short of explicitly suggesting—we must examine the purpose and effect of each statute individually to determine if, on its face or as applied in a given instance, it deprives disputants of constitutionally due process.

Nor is section 44944(e) unique, radical or particularly novel in imposing costs on the losing party without requiring a finding the party's position was

---

allow recovery of hearing costs as such. One should note, however, that the prehearing costs are not within the control of the disciplined person, can include fees of the disciplinary board's attorneys (*Schneider* v. *Medical Board* (1997) 54 Cal.App.4th 351 [62 Cal.Rptr.2d 710]), and can be quite large. The California Medical Association, in its amicus curiae brief, points out that these costs are "open-ended" and represents there have been "several cases where more than $100,000 has been sought."

frivolous. Although the law typically imposes sanctions, penalties, or tort liability on the basis of frivolousness (see maj. opn., *ante*, at p. 340), *costs* are commonly awarded simply to the prevailing party, without regard to whether the other party's position lacked arguable merit. (See, e.g., Code Civ. Proc., § 1032, subd. (b) ["Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."]; Cal. Rules of Court, rule 26(a)(1) ["Except as provided in this rule, the prevailing party shall be entitled to costs on appeal . . . as an incident to the judgment on appeal."].) In many types of actions, the prevailing party may recover his or her attorney fees as costs. (See, e.g., Code Civ. Proc., §§ 1021.4 [prevailing plaintiff in action based upon defendant's commission of felony], 1021.5 ["successful party" in action benefiting public], 1021.9 [prevailing plaintiff in action for damages from trespass on farming or grazing land], 1036 [prevailing plaintiff in inverse condemnation action entitled to reasonable costs of proceeding, including attorney, appraisal and engineering fees]; Civ. Code, § 1780, subd. (d) [prevailing plaintiff in action by consumer for unfair or deceptive trade practice]; Gov. Code, § 12965, subd. (b) [prevailing plaintiff in action under Fair Employment and Housing Act].) In all these cases, a losing defendant can be ordered to pay the plaintiff's court costs, including attorney fees, even though the defendant's position in the litigation may have been far from frivolous.

Moreover, as already noted, California law provides for other circumstances, including some administrative proceedings, in which the losing party must pay part or all the cost of the *adjudicator* regardless of whether the party's losing position had arguable merit. (See Bus. & Prof. Code, § 6086.10, subd. (b)(3); *id.*, § 7403, subd. (b); Code Civ. Proc., § 1033.5, subd. (a)(1).) Section 44944(e), therefore, is not unique in using a prevailing-party standard, in imposing part of the adjudicator's expenses as costs, or in doing both these things together.

That a law is not unique, of course, does not necessarily mean it is constitutionally valid, any more than a law's unusual characteristics necessarily amount to constitutional deficiencies. The question of section 44944(e)'s constitutionality must be answered by application of established principles of procedural due process. Applying such principles, as explained below, I conclude plaintiffs have not met their persuasive burden of showing, in this facial attack, that section 44944(e) "inevitably" and "total[ly]" (*Tobe* v. *City of Santa Ana*, *supra*, 9 Cal.4th at p. 1084), or even "general[ly] and ordinar[ily]" (*American Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307, 347 [66 Cal.Rptr.2d 210, 940 P.2d 797] (plur. opn. of George, C. J.)), deprives teachers threatened with dismissal of a reasonable opportunity to contest the charges against them.

## II

Neither this court nor the United States Supreme Court has addressed the validity of a procedure that financially burdens a permanent government employee's exercise of the constitutional right to a pretermination hearing. This court and the federal high court have, however, discussed more generally the chilling, through imposition of excessive risk, of a person's exercise of procedural rights. From an examination of these decisions I conclude that, while due process does not require that the exercise of a constitutionally mandated hearing right be free from *all* costs, attaching a financial burden or risk to exercise of a hearing right will be deemed impermissible when the cost or risk is so high as effectively to deny the hearing right itself, or when its imposition is unjustified by any substantial purpose other than chilling the exercise of the hearing right.

Not *all* laws imposing financial or other costs on the exercise of a procedural right are unconstitutional. "[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." (*Corbitt* v. *New Jersey* (1978) 439 U.S. 212, 218 [99 S.Ct. 492, 497, 58 L.Ed.2d 466], fn. omitted.) We have said, similarly, that "it is not required that no burden at all be placed on a defendant's constitutional rights; it is only an excessive burden that is impermissible . . . ." (*People* v. *Amor* (1974) 12 Cal.3d 20, 28 [114 Cal.Rptr. 765, 523 P.2d 1173]; see also *In re Green* (D.C. Cir. 1981) 669 F.2d 779, 786 [215 App.D.C. 393] ["a court may impose conditions upon a litigant—even onerous conditions—so long as . . . they are, taken together, not so burdensome as to deny the litigant meaningful access to the courts"].) The circumstances under which a burden upon the exercise of a procedural right will be deemed "excessive" or otherwise impermissible have not been fixed with great exactitude, but a few general guidelines can be drawn from the cases.

Confiscatory, ruinous or otherwise prohibitive financial penalties on the exercise of a procedural right are impermissible because they effectively deny the process that is due (*Ex parte Young* (1908) 209 U.S. 123, 146-147 [28 S.Ct. 441, 448-449, 52 L.Ed. 714]; *Winston* v. *City of New York* (2d Cir. 1985) 759 F.2d 242, 245-246;[2] *Brown & Williamson Tobacco Corp.* v. *Engman* (2d Cir. 1975) 527 F.2d 1115, 1119), although even a prohibitive

---

[2]*Winston* presented a clear case of an excessive burden on a teacher's exercise of hearing rights. Under a provision of the New York City Administrative Code, teachers dismissed for cause forfeited their rights to city-funded retirement benefits, while those who, upon the filing of charges, resigned rather than demanding a hearing retained their retirement benefits. (*Winston* v. *City of New York, supra,* 759 F.2d at pp. 243-244.) The appellate court found this provision unconstitutionally prevented the teachers' exercise of their due process rights to a

barrier to access may perhaps be imposed if the state has "a sufficient countervailing justification" (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 380-381 [91 S.Ct. 780, 787, 28 L.Ed.2d 113]). The imposition of a cost or risk on the exercise of a procedural right is also impermissible if it has no purpose or effect other than to punish, deter or prevent exercise of the right. (*Fuller* v. *Oregon* (1974) 417 U.S. 40, 54 [94 S.Ct. 2116, 2125, 40 L.Ed.2d 642]; *North Carolina* v. *Pearce* (1969) 395 U.S. 711, 723-725 [89 S.Ct. 2072, 2079-2080, 23 L.Ed.2d 656]; *United States* v. *Jackson* (1968) 390 U.S. 570, 581 [88 S.Ct. 1209, 1216, 20 L.Ed.2d 138]; *Rankin* v. *Independent School Dist. No. I-3* (10th Cir. 1989) 876 F.2d 838, 840;[3] *Winston* v. *City of New York, supra,* 759 F.2d at p. 246.)

 . Does section 44944(e) impose prohibitive, ruinous or confiscatory costs on a teacher who loses at the hearing? Is the "penalty" imposed for an unsuccessful challenge to dismissal so great that the teacher, like the rail companies in *Ex parte Young, supra,* 209 U.S. at page 146 [28 S.Ct. at page 448], "could not be expected" to risk the cost? In the context of this facial challenge, I must answer negatively. The hearing costs shared under section 44944(e) may be substantial and, to some degree, uncertain in advance, but I cannot say they "inevitably" and "total[ly]" (*Tobe* v. *City of Santa Ana, supra,* 9 Cal.4th at p. 1084), or even "general[ly] and ordinar[ily]" (*American Academy of Pediatrics* v. *Lungren, supra,* 16 Cal.4th at p. 347), consti- tute a prohibitive risk for a teacher seeking to save his or her job. Even conceding the cost-sharing provision could have a chilling effect in some instances, the record and briefing in this case provide no basis for conclud- ing that effect rises to the level of a generally preclusive barrier to mainte- nance of an administrative challenge. Again, plaintiffs have presented no evidence *any* teacher has been deterred by section 44944(e) from seeking a hearing.

Is section 44944(e) justified by a legitimate purpose, i.e., one other than simply chilling teachers' demands for hearings? As already discussed, the

---

pretermination hearing. The court concluded the stakes for an accused teacher were so high—teachers, in order to vindicate their rights, were forced, in effect, to "stake their economic future on a panel decision"—that "the City has effectively eliminated that teacher's access to a forum to vindicate his or her innocence." (*Id.* at p. 246.) As will appear, plaintiffs have made no such showing with regard to section 44944(e).

[3]*Rankin*, while superficially close to this case, is readily distinguishable in that the Oklahoma statute there at issue required cost sharing *whatever* the hearing's outcome and did not provide any compensating financial benefit if the teacher won. (*Rankin* v. *Independent School Dist. No. I-3, supra,* 876 F.2d at p. 839.) Oklahoma was therefore unable to argue, as does California in the present case, that its statute was intended to discourage particularly meritless hearing demands while encouraging potentially meritorious demands. In addition, *Rankin*'s result rested on application of strict constitutional scrutiny, a standard even plaintiffs do not contend should be applied here.

purpose of the law is not to discourage hearing demands in general, but to recoup a part of the school district's costs in appropriately brought dismissal proceedings and, by imposing such partial costs only on a teacher who loses while also providing for government payment of attorney fees for a teacher who wins, to differentially discourage and encourage teacher hearing demands on the basis of likely merit.

I agree with the Attorney General that the deterrence of likely meritless demands for hearing, and the corresponding encouragement of potentially meritorious challenges to termination, is a legitimate state goal. (See, e.g., *Lindsey* v. *Normet* (1972) 405 U.S. 56, 78 [92 S.Ct. 862, 877, 31 L.Ed.2d 36] ["We do not question here reasonable procedural provisions . . . to discourage patently insubstantial appeals, if these rules are reasonably tailored to achieve these ends and if they are uniformly and nondiscriminatorily applied"]; *Roller* v. *Gunn* (4th Cir. 1997) 107 F.3d 227, 229 [requirement of partial filing fee for prisoner suits is "legitimate exercise of Congress' power to reduce frivolous lawsuits"].) The state's undeniable interest in obtaining the dismissal of teachers who have committed serious misconduct or are otherwise unfit to teach entitles it to take reasonable measures to prevent unnecessary delay and expense in such dismissals.

By differentially encouraging and discouraging teachers' hearing demands depending on the strength of the teacher's defense, section 44944(e) serves the legitimate and important goals of improving public education and conserving public resources. At least on its face, then, section 44944(e) broadly serves a legitimate state purpose and does not impose a generally prohibitive barrier on access to administrative review. Under the precedents reviewed above, the statute therefore does not per se constitute an impermissible burden on the exercise of teachers' hearing rights. In the next part of the analysis I discuss whether, under the general balancing analysis of *Mathews* v. *Eldridge, supra,* 424 U.S. 319 (*Mathews*), the statute nevertheless is so poorly tailored to its legitimate purpose that its public benefits are outweighed by the risk it creates of erroneous result.

## III

Under the *Mathews* analysis for determining the process constitutionally due, three factors should be considered: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews, supra,* 424 U.S. at p. 335 [96 S.Ct. at p. 903].) *Mathews* requires the court to "strik[e] the appropriate due process balance" among these factors. (*Id.* at p. 347 [96 S.Ct. at p. 909]; see also, e.g., *Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532, 542 [105 S.Ct. 1487, 1493, 84 L.Ed.2d 494] [*Mathews* analysis involves "a balancing of the competing interests at stake"].) The *Mathews* court nonetheless insisted that "more is implicated in cases of this type than ad hoc weighing" of competing burdens (424 U.S. at p. 348 [96 S.Ct. at p. 909]) and that, finally, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' [citation], to insure that they are given a meaningful opportunity to present their case." (*Id.* at p. 349 [96 S.Ct. at p. 909].)

I first consider, therefore, the private interest at stake, the teacher's interest in continuing employment. I agree with the majority this factor weighs in plaintiffs' favor as a particularly strong economic interest. "[T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. [Citations.] While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." (*Cleveland Board of Education* v. *Loudermill, supra,* 470 U.S. at p. 543 [105 S.Ct. at p. 1494].) In addition, teachers charged, as was Daloyan, with "immoral conduct" face the prospect of dismissal under circumstances that may deprive them of their liberty interest in pursuing a livelihood. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 573-574 [92 S.Ct. 2701, 2707-2708, 33 L.Ed.2d 548].)

Evaluation of the second *Mathews* factor—the risk of erroneous results under the state's procedures and the benefit of additional or substitute procedural safeguards—depends here on the extent to which section 44944(e) actually tends to deter teachers with potentially meritorious defenses to termination from demanding hearings. The challenged procedure in this case, the conditional sharing of partial costs under section 44944(e), carries a risk of reaching an erroneous result only to the extent it actually deters the exercise of hearing rights by such teachers. On this facial challenge, I am unable to conclude that the possible sharing of partial hearing costs will *inevitably,* or even *ordinarily,* deter a hearing demand from teachers who believe they have a meritorious defense to the charges against them.

The assessment of the degree of likely "chilling" of meritorious hearing demands is complicated by the fact section 44944(e) contains other, countervailing, cost-allocation provisions, most notably the provision that, if the

commission decides against dismissal, the district pays the teacher's reasonable attorney fees incurred at the hearing. The state argues the "substitute" procedure we should consider in the *Mathews* analysis is one premised on the complete invalidation of section 44944(e), and that such invalidation would actually *increase* the risk of erroneous results because teachers with meritorious defenses would lose their current incentive to hire attorneys and go to hearing. Plaintiffs, however, deny that their challenge, if successful, would require the complete invalidation of section 44944(e). The rest of section 44944(e), plaintiffs insist, will "work just fine" with deletion of the single provision requiring a losing teacher to share the hearing expenses.

I do not agree the hearing cost provision can be severed from the rest of section 44944(e) in the manner plaintiffs suggest. The statute contains no severance clause. Mechanically, the disputed provision cannot be simply removed, since removal would leave undetermined who (the state or the district) is to pay the hearing expenses. Most important, whether the remainder " ' "is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute" . . .' " (*Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 190 [185 Cal.Rptr. 260, 649 P.2d 902]) is doubtful. The statute as written contains a set of trade-offs and matched incentives, no one of which can be disposed of without disturbing the legislative balance. Would the Legislature, for example, have provided for payment of a winning teacher's attorney fees had it known it could not validly require a losing teacher to contribute to the cost of the administrative law judge? Would it have provided for the district or state to pay the expenses of the employee's member of the commission, win or lose? I can answer neither of these questions confidently in the affirmative. I agree with defendants that, in assessing the costs and benefits of the statutory scheme, we must consider that scheme as a whole, including its benefits to teachers successful in their challenges.

I have already observed that section 44944(e), by penalizing unsuccessful challenges and rewarding successful ones, does, to some extent, serve the legitimate purpose of discouraging meritless defenses and encouraging those with potential merit. It remains to be considered whether the statute fails constitutionally because it is not sufficiently tailored to this purpose, in that it applies, as the Court of Appeal noted, even if a teacher prevails in part, and "regardless of the teacher's good faith, the arguable merit of his or her position, or how reasonably he or she pursues the matter."

Because section 44944(e) applies to all teachers dismissed after hearing, even those who had arguable defenses or were partially vindicated, some

teachers with arguable cases against dismissal may be discouraged from demanding a hearing by the potential for costs, creating a risk of error in those cases. That such a risk may exist in some cases does not show, however, that it exists in "the generality of cases" (*Mathews, supra*, 424 U.S. at p. 344 [96 S.Ct. at p. 907]). At the same time, by providing for payment of a successful teacher's attorney fees and relieving such teachers from any sharing of hearing costs, the statute offers a significant measure of encouragement to teachers who reasonably believe they have been unfairly or erroneously threatened with dismissal. On this facial challenge, I am unable to fix the degree to which that encouragement to pursue meritorious defenses will be outweighed by a teacher's concern the hearing might, despite the teacher's good faith defense, result in dismissal and therefore in assessment of partial hearing costs. Neither the risk of an erroneous result, through the chilling of meritorious challenges, nor the degree to which meritless challenges will, as intended, be deterred, is certain.

The majority argues that in the *Mathews* analysis we should consider, as additional or substitute procedural safeguards, possible procedures "for assessing whether the teacher's position has potential merit or whether the costs of the hearing exceed the teacher's ability to pay." (Maj. opn., *ante*, at p. 349.) Because such (unspecified) procedures would assertedly not be costly or burdensome to the state, and because they would help to protect the liberty and property interests at stake in a dismissal hearing, the majority argues, their absence renders section 44944(e) facially invalid.

This reasoning cannot be correct as a method of constitutional scrutiny. Under the majority's analysis, any procedural scheme that could be improved so as to increase its truthfinding efficiency while imposing relatively small costs on the state would be, simply for that reason, subject to complete invalidation. This court would sit as a legislative board of review over all procedural statutes, entertaining in each case any suggestions for improvement in the statutory scheme and finding the law invalid on its face if we believed the benefits of different or additional provisions would outweigh their cost.

But the question before us is *not* whether section 44944(e) could or should be improved; the question, rather, is whether, as enacted and on its face, the statute deprives teachers of a meaningful opportunity to present their case. The additional or substitute procedures we must consider are those the plaintiffs seek to have applied. Plaintiffs do not seek a holding that section 44944(e) may be constitutionally applied only when the teacher is able to pay the assessed cost, or only when the teacher's defense to dismissal had no

arguable merit. Plaintiffs seek, and the majority would provide, a ruling that the cost-sharing provisions of section 44944(e) may not be applied in *any* case because they are in total and inevitable conflict with the due process provisions of the state and federal Constitutions. Thus, the alternative procedural scheme they advocate, and the one we should assess, is one that includes none of the cost-sharing provisions (or, as explained above, the attorney fee provision) of section 44944(e). As just discussed, on this record the relative benefits of such a scheme to the discovery of truth are unknown.

I turn, finally, to the third *Mathews* factor, the government interest in maintaining the existing procedural scheme. As discussed earlier, school districts have a substantial and legitimate interest in avoiding the expense and educational disruption of drawn-out dismissal proceedings lengthened by meritless hearing demands, an interest section 44944(e) directly serves by imposing a cost on demands for an ultimately unsuccessful hearing. Amicus curiae Education Legal Alliance (an association of public school districts and governing boards) elaborates usefully on this point: "Currently, teachers have a stake in the dismissal procedure. As a result, not every dismissal is appealed. Much of the time, teachers and school districts reach settlement agreements. These settlement agreements often save valuable resources (both for the district and the teacher's union), and minimize the disruption of the educational process for our students. [¶] . . . Invalidating Education Code section 44944, subdivision (e), would create an incentive for all teachers to appeal dismissal, thereby imposing significant costs on school districts. . . . [¶] . . . The lengthy discovery process and attorney's fees are not the only burdens a district faces in a dismissal proceeding. The dismissal process absorbs huge amounts of staff time, and often has a negative impact on morale. From a fiscal standpoint, since funds spent on administrative hearings are funds which do not reach classrooms, schools have an interest in minimizing costs. That interest cannot be satisfied if school districts are the only parties with an investment in the dismissal procedure."

To weigh against the state's important and legitimate interest, plaintiffs produce, in essence, only a speculative assumption that the possibility of paying partial adjudicative costs will deter even a teacher with potentially meritorious defenses to the charges from demanding a hearing that might preserve his or her job. Plaintiffs, in my view, have failed to show a risk of error sufficient to outweigh the state's interest in the generality of cases. Permanent teachers are constitutionally entitled to a meaningful opportunity to contest the charges against them prior to dismissal, but they are not guaranteed a system in which *any* contest can be brought without cost. On balance, this record and briefing do not allow me to conclude the cost-sharing requirement denies teachers threatened with dismissal "a meaningful

opportunity to present their case." (*Mathews*, *supra*, 424 U.S. at p. 349 [96 S.Ct. at p. 909].)

## CONCLUSION

Permanent teachers threatened with dismissal are statutorily and constitutionally entitled to contest the charges in a pretermination hearing. Section 44944(e), by requiring that teachers who unsuccessfully contest their termination and are dismissed after demanding a hearing pay half the cost of the administrative law judge, places a burden on the teachers' exercise of their constitutional hearing right. But not all burdens on the exercise of a procedural right constitute a denial of due process. Plaintiffs here have failed to demonstrate that the burden imposed by section 44944(e) is constitutionally impermissible, either because, inevitably or in its ordinary application, the statute operates to block access to the mandated hearing, or because it fails to serve any legitimate purpose. Nor have they demonstrated that the statute, viewed as a whole, creates a risk of erroneous termination significant enough to outweigh the state's legitimate interest in discouraging meritless hearing demands while encouraging those with potential merit. Although individual instances may arise in which the statute would create an impermissible burden or deny a teacher a meaningful opportunity to be heard, plaintiffs' facial attack on the statute should be rejected.

Chin, J., and Brown, J., concurred.