104 Cal.Rptr.2d 504 (2001)
87 Cal.App.4th 354
David McCOY, Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
Marshack, Shulman & Hodges, Real Party In Interest.
No. G026848.
Court of Appeal, Fourth District, Division Three.
February 27, 2001.
As Modified March 28, 2001.
Review Denied June 20, 2001.[*]
*505 Michael J. Faber, Santa Monica, for Petitioner.
No appearance for Respondent.
Fisher & Phillips, James J. McDonald, Jr., Irvine, and Scott D. Schneider, New Orleans, LA, pro hac vice, for Real Party in Interest.

OPINION
SILLS, P.J.
David McCoy seeks a writ of mandate from this court commanding the superior court to reverse its order granting his former employer's petition to compel arbitration. McCoy claims the agreement to arbitrate is procedurally and substantively unconscionable. We agree and issue the writ.
David McCoy had been employed by the law firm of Marshack Shulman & Hodges *506 (the Firm) as a file clerk for about three and a half years when he was summarily terminated in April 1999. McCoy believed his termination was related to his impending two-week leave of absence for annual military training and filed a wrongful termination action against the Firm in the Orange County Superior Court. The Firm moved to compel arbitration, citing an agreement signed by McCoy. The trial court granted the motion, and McCoy petitioned this court for a writ of mandate. We issued an order to show cause and set the matter for oral argument.
The arbitration agreement, styled with the employee as the first person, states: "Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both Employer and myself, I voluntarily agree that any claim, dispute, and/or controversy ... arising from, related to, or having any relationship or connection whatsoever with my ... employment ... whether based on tort, contract, statutory, or equitable law, or otherwise ... shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act...." The agreement adds the requirement that the arbitrator "shall be a retired California Superior Court Judge," and provides for "the arbitrator's written reasoned opinion" and appellate-type review by a second arbitrator at either party's request. The sentence at the end of the arbitration provisions reads: "I UNDERSTAND BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND EMPLOYER GIVE UP OUR RIGHTS TO TRIAL BY JURY." The agreement provides for the signature of the employee only.
McCoy submitted a declaration in opposition to the motion to compel arbitration, stating he signed the agreement in November 1998 because he "was told that if I did not sign the agreement, that I would be fired. I was given no choice but to do it." He also declared the cost of the arbitration "will be a severe hardship to me."

DISCUSSION
Arbitration is a highly favored method of dispute resolution. But the "bedrock justification" for its favored status is its voluntariness. (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 115, 99 Cal. Rptr.2d 745, 6 P.3d 669.) "`[Policies favoring the efficiency of private arbitration as a means of dispute resolution must sometimes yield to its fundamentally contractual nature....'" (Ibid., citing Vandenberg v. Superior Court (1999) 21 Cal.4th, 815, 831, 88 Cal.Rptr.2d 366, 982 P.2d 229.) Thus, an agreement to arbitrate can be invalidated "upon such grounds as exist for the revocation of any contract." (Code Civ.Proc., § 1281.) Because unconscionability is a defense to the enforcement of contracts in general, it is applied with equal force to arbitration agreements.
An unconscionable agreement typically is one of adhesion, i.e., "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (Neat v. State Farm Ins. Cos. (1961) 188 Cal.App.2d 690, 694, 10 Cal.Rptr. 781.) If an adhesion contract is contrary to the expectations of the weaker party or oppressive as applied to him, the courts will refuse to enforce it against him. (See A & M Produce Co. v. FMC Corp. (1982) 135 Cal.App.3d 473, 497, 186 Cal.Rptr. 114.)
The concept of unconscionability includes both procedural and substantive elements, both of which are generally present to some degree. The procedural element involves the absence of meaningful choice due to inequality in bargaining power or hidden terms. (See Kinney v. United HealthCare Services, Inc. (1999) 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d *507 348.) The substantive element focuses on the terms of the agreement and whether they are unjustifiably one-sided and unreasonably harsh. (See Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1532, 60 Cal.Rptr.2d 138.) The two elements work together in a sliding scale relationship. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (Armendariz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th 83, at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
The Firm acknowledges McCoy was required to agree to arbitration or lose his job: "If [McCoy] did not want to sign an arbitration agreement with [the Firm], he could have found employment at another firm." But the Firm does not see this as a problem. Citing Lagatree v. Luce, Forward, Hamilton & Scripps (1999) 74 Cal.App.4th 1105, 88 Cal.Rptr.2d 664, it argues that making an arbitration agreement a condition of employment does not ipso facto render it procedurally unconscionable. We disagree.
The procedural posture of Lagatree was significantly different from the case before us. There, the plaintiff refused to sign a compulsory arbitration agreement presented to him after almost four years of employment, and he was discharged. He found another job after a few months, but was discharged on the third day when he refused to sign the second employer's arbitration agreement. The plaintiff brought wrongful termination actions against his former employers, alleging he had been discharged in violation of public policy. The actions were dismissed after demurrers were sustained without leave to amend.
The Lagatree court reviewed existing case law and concluded predispute arbitration agreements imposed as a condition of employment are not per se unenforceable; thus, a termination for failure to sign did not violate a "substantial public policy." (Id. at p. 1128, 88 Cal.Rptr.2d 664.) Plaintiff argued at least one of the agreements was unenforceable because it required the losing party to bear the entire cost of the arbitration. The court sidestepped that question: "Of course, the question before us is not whether a particular provision in the ... arbitration agreement would be enforceable today. Rather, the question is whether [it] violated a public policy that was `not only "fundamental" and "substantial," but also "well established" at the time of [Lagatree's] discharge.' [Citations.]" (Id. at p. 1131, 88 Cal.Rptr.2d 664, italics in original.) It concluded that as of June 1997 (the date of discharge), there was not a well-established policy in California against imposing arbitrator fees on the losing party in an employment-related arbitration.
Lagatree's holdingthat "a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a `take it or leave it' basis" (id. at p. 1127, 88 Cal. Rptr.2d 664, italics added)is merely another way of stating the generally accepted principle that all adhesion contracts are not necessarily unenforceable as unconscionable. (Graham v. Scissor-Tail (1981) 28 Cal.3d 807, 819-820, 171 Cal.Rptr. 604, 623 P.2d 165.) It is beyond dispute that the Firm's arbitration agreement here, having been imposed as a condition of employment with no opportunity to negotiate, was adhesive. (Armendariz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th at pp. 114-115, 99 Cal. Rptr.2d 745, 6 P.3d 669.) And while we agree there must be more to render a contract unenforceable, an adhesive contract fulfills the first step in the unconscionability analysis. Especially in the context of an employment agreement, the adhesive nature of a compulsory predispute arbitration agreement is the filter through which the rest of the analysis is performed. "Given the lack of choice and the potential disadvantages that even a fair arbitration *508 system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." (Id. at p. 115, 99 Cal. Rptr.2d 745, 6 P.3d 669.)
McCoy claims the arbitration agreement imposed on him is substantively unconscionable for two reasons: It is too expensive and it is one-sided. We agree on both counts.
Several cases have addressed the question of who shall bear the cost of the arbitration of employment disputes when compelled by a predispute arbitration agreement. In Cole v. Burns International Security Services (D.C.Cir.1997) 105 F.3d 1465, the court held an employer could not require an employee to submit his statutory claims to arbitration and then require him to pay all or part of the arbitrators' fees. Observing that the average arbitrator's fee is $700 per day, the court characterized these fees as "prohibitively expensive" for an employee who has lost his job, rendering him unable to pursue his statutory claims. (Id. at p. 1484.) Cole was cited with approval by the California Supreme Court in California Teachers Assoc. v. State of California (1999) 20 Cal.4th 327, 84 Cal.Rptr.2d 425, 975 P.2d 622, which invalidated a provision in the Education Code imposing half of the costs of an administrative law judge on teachers who unsuccessfully challenged a threatened suspension or dismissal. The court concluded these costs "necessarily and impermissibly deter[ ] teachers from exercising their due process right to a hearing" (id. at p. 357, 84 Cal.Rptr.2d 425, 975 P.2d 622), bolstering its reasoning with a reference to Cole: "The invalidity of a provision requiring dismissed public teachers to pay for the public cost of the administrative law judge is apparent when we consider decisions holding that even private employees who have agreed to private arbitration of statutory wrongful termination claims cannot be compelled to pay half the cost of the arbitrator." (Id. at pp. 354-355, 84 Cal.Rptr.2d 425, 975 P.2d 622.)
Our Supreme Court wholeheartedly embraced the Cole principle in the recent case of Armendariz v. Foundation Health Psychcare, Inc., supra, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669. In Armendariz, the plaintiffs brought a wrongful termination action against their former employer, alleging violation of the California Fair Employment and Housing Act (FEHA) and other causes of action. The employer moved to compel arbitration under a clause in the employment application form and a separate arbitration agreement subsequently executed by the employees, which provided: "`I agree as a condition of my employment, that in the event my employment is terminated, and I contend that such termination was wrongful or otherwise in violation of the conditions of employment ..., I and Employer agree to submit any such matter to binding arbitration pursuant to the provisions of ... Code of Civil Procedure ... section 1280 et seq.'" (Id. at p. 92, 99 Cal.Rptr.2d 745, 6 P.3d 669) The clause limited the employee's remedies to "`a sum equal to the wages I would have earned from the date of any discharge until the date of the arbitration award.'" (Ibid.)
The Supreme Court first discussed the arbitrability of statutory antidiscrimination claims, finding that while mandatory employment arbitration agreements encompassing these claims were not prohibited, they were subject to five minimum requirements: "Such an arbitration agreement is lawful if it `(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.' [Citation.]" (Id. at p. 102, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The court found the limitation on damages unlawful and against public *509 policy and turned its attention to the payment of costs.
The arbitration agreement did not specifically require the employee to pay part of the arbitration costs, but Code of Civil Procedure section 1284.2, incorporated by reference into the agreement, provides that unless the arbitration agreement provides otherwise, each party to the arbitration must pay his or her pro rata share of arbitration costs. The court brushed this section aside, characterizing it as a "default provision" and finding an "agreement to arbitrate a statutory claim is implicitly an agreement to abide by the substantive remedial provisions of the statute." (Id. at p. 112, 99 Cal.Rptr.2d 745, 6 P.3d 669.) It construed the FEHA as implicitly prohibiting such costs, finding it unthinkable that "the intended beneficiary of such an antidiscrimination statute would be compelled to pay large arbitration costs as a condition of pursuing an antidiscrimination claim." (Ibid.)
While the court's rationale for requiring the employer to pay arbitration-related costs is couched in terms of statutory claims, many of the principles upon which it bases its reasoning are equally applicable to employer mandated arbitration of nonstatutory claims. The exercise of the constitutional right of due process is deterred by the risk that the claimant may have to bear substantial costs; and the average arbitration award is smaller than those of litigation, thus making large forum costs even more burdensome on potential claimants. Most important, however, is the court's recognition that "the above rule [that the employer must bear arbitration costs] is fair, inasmuch as it places the cost of arbitration on the party that imposes it. Unlike the employee, the employer is in a position to perform a cost/benefit calculus and decide whether arbitration is, overall, the most economical forum. Nor would this rule necessarily present an employer with a choice between paying all the forum costs of arbitration or forgoing arbitration altogether and defending itself in court. There is a third alternative. Because this proposed rule would only apply to mandatory, predispute employment arbitration agreements, and because in many instances arbitration will be considered an efficient means of resolving a dispute both for the employer and the employee, the employer seeking to avoid both payment of all forum costs and litigation can attempt to negotiate postdispute arbitration agreements with its aggrieved employees." (Id. at pp. 111-112, 99 Cal. Rptr.2d 745, 6 P.3d 669.)
The Armendariz court also discussed whether the arbitration agreement was unconscionable under principles "that apply more generally to any type of arbitration imposed on the employee by the employer as a condition of employment, regardless of the type of claim being arbitrated." (Id. at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669.) It concluded the agreement required arbitration of employee claims arising out of wrongful termination but not employer claims arising out of wrongful termination. "Although it did not expressly authorize litigation of the employer's claims against the employee ... such was the clear implication of the agreement. Obviously, the lack of mutuality can be manifested as much by what the agreement does not provide as by what it does." (Id. at p. 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
The court found this unjustified unilateral nature of the obligation to arbitrate, imposed in an adhesive context, was unconscionable. "If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose." (Id. at p. 118, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
Under the principles expressed in Armendariz, we find the agreement signed by McCoy fails the unconscionability test. *510 While the agreement recited the employee's "understanding" that the employer gave up its right to a jury trial, it only obligated the employee, not the employer, to arbitrate claims arising from his employment. At best, the agreement is ambiguous; at worst, it is a deliberate attempt to obfuscate the Firm's retention of litigation rights. Contrast the clearly expressed mutual obligation to arbitrate that was upheld in 24 Hour Fitness, Inc. v. Superior Court (1998) 66 Cal.App.4th 1199, 78 Cal.Rptr.2d 533: "`If any dispute arises from your employment with Nautilus, you and Nautilus agree that you both will submit it exclusively to final and binding arbitration.'" (Id. at p. 1205, 78 Cal.Rptr.2d 533, italics omitted.) The agreement here did not clearly require the employer to arbitrate its claims against the employee.
Like the agreement in Armendariz, the costs of arbitration here are governed by Code of Civil Procedure section 1284.2, which splits them in half. The Firm argues because the allocation has been set by the Legislature, it cannot be considered unconscionable. McCoy, on the other hand, asserts any arbitration scheme that imposes forum costs on the employee is inherently unconscionable. We reject both extremes.
The agreement here requires the arbitration to be conducted by a retired superior court judge. McCoy advises us that such arbitrators charge a minimum of $400 per hour and typically require deposits of $8000 before proceedings begin. To require McCoy to shoulder half of these expenses, when arbitration was mandated by the Firm as a condition of keeping his job and can occur or not at the Firm's option, makes no sense. We need not ignore the realities of the workplace and hide behind the fiction that McCoy "voluntarily" agreed to split arbitration costs. "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all: but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (Armendariz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th at p. 115, 99 Cal. Rptr.2d 745, 6 P.3d 669.)
The Firm argues even if the agreement is unconscionable, it should still be enforced without the offensive provisions. Civil Code section 1670.5 allows the trial court to "refuse to enforce the [unconscionable] contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).)
Some cases have directed the trial court to sever an unconscionable provision from an arbitration agreement and enforce the remainder. (See, e.g., Graham v. Scissor Tail, supra, 28 Cal.3d at p. 831, 171 Cal. Rptr. 604, 623 P.2d 165; Shubin v. William Lyon Homes (2000) 84 Cal.App.4th 1041, 1063, 101 Cal.Rptr.2d 390; Saika v. Gold (1996) 49 Cal.App.4th 1074, 56 Cal. Rptr.2d 922; Beynon v. Garden Grove Medical Group (1980) 100 Cal.App.3d 698, 161 Cal.Rptr. 146.) But in these cases, the unconscionability was confined to a single provision and a viable agreement remained, notwithstanding the provision's omission. Here, the agreement's unconscionability permeates it in such a way that the trial court would have to reform the agreement by augmenting it with additional terms. "Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent, limited authority to reform contracts.... Because a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, *511 it must void the entire agreement." (Armendariz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th at p. 125, 99 Cal.Rptr.2d 745, 6 P.3d 669.)[1]
Let a writ of mandate issue commanding the superior court to vacate its order granting the Firm's motion to compel arbitration and enter a different order denying the motion. Petitioner is entitled to costs. (Cal. Rules of Court, rule 56.4(a).)
RYLAARSDAM, J., and O'LEARY, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] At oral argument, the Firm offered to pay the forum costs. This offer was not made in the trial court and will not be considered by us here.